Edward E. COLTON and Lillian Kaltman,
Petitioners-Appellants,

v.

UNITED STATES of America,
Respondent-Appellee.

UNITED STATES of America,
Petitioner-Appellee,

v.

Edward E. COLTON, Respondent-
Appellant.

Nos. 316–317, Dockets 26939, 27374.

United States Court of Appeals
Second Circuit.

Argued April 11, 1962.

Decided July 30, 1962.

**634**

Jules Ritholz, New York City (Boris Kostelanetz, George G. Gallantz, Edward J. Daus and Corcoran, Kostelanetz, Gladstone & Lowell, New York City, on the brief), for appellants.

Morton L. Ginsberg, Asst. U. S. Atty., Southern District of New York, New York City (Robert M. Morgenthau, U. S. Atty., and Arthur S. Olick and Victor Temkin, Asst. U. S. Attys., on the brief), for appellee.

Before LUMBARD, Chief Judge, and SWAN and KAUFMAN, Circuit Judges.

LUMBARD, Chief Judge.

These appeals raise questions concerning the propriety of a virtually complete refusal by tax counsel, primarily on the ground of the attorney-client privilege, to answer questions and produce files at an examination conducted by special agents of the Internal Revenue Service concerning the tax liability of a client. We hold that it was proper to require counsel to answer questions concerning the years during which they performed legal services and the general nature of the services. We also affirm the order requiring counsel to produce certain documents or files and to answer relevant questions concerning the nature of papers in their possession.

At some time prior to July 29, 1960, the Internal Revenue Service began an investigation into the tax liabilities of Herbert Matter and his wife, Mercedes, apparently with a view to possible criminal prosecution. On July 29, 1960, the Service served identical summonses under § 7602 of the Internal Revenue Code of 1954 upon Edward E. Colton, an attorney, and Lillian Kaltman, an attorney associated with Mr. Colton, directing them to appear in New York City before special agent Anton Kurtzuk on August 9, 1960 to give testimony and to bring with them and produce "retained copies of income tax returns, workpapers, correspondence files, memoranda and all other data relating to the preparation and the filing of Federal Income Tax Returns for or on the behalf of [the Matters] * * * covering and including the years 1951 through 1958." The appellants state, and the government does not deny, that special agent Kurtzuk informed Miss Kaltman that "he wished to question the

attorneys about the reasons which the taxpayers gave their counsel for filing certain tax returns late"; an affidavit submitted by agent Kurtzuk below states the primary purpose of the investigation in similar language. The Service later consented to the adjournment of the return date of the summonses to September 21, 1960.

On September 20, 1960, the appellants obtained from the district court an order requiring the government to show cause why the summonses should not be quashed or modified and staying compliance. The appellants stated that "the subject matter of Mr. Kurtzuk's proposed inquiry would * * * so flagrantly induce a violation of their duty to the taxpayers arising out of the relationship of attorney and client that this petition was deemed necessary by the petitioners." Pending the hearing of the petition, the appellants entered into a stipulation with the government that the above quoted portion of the summonses be amended to add the phrase "except for such portions of said testimony and production that are within the attorney-client privilege." Pursuant to further terms of the stipulation the appellants appeared to testify on November 23, 1960; the stipulation provided that if the appearance was not accepted by the Service as adequate compliance with the summonses, then the petition to quash should proceed for hearing in the district court.

At the November 23 hearing, Mr. Colton and Miss Kaltman testified only that the Matters were clients of their firm, refusing to give any substantial information as to the firm's role, if any, in preparing the tax returns in question. They had with them records of the firm pertaining to the Matters, but refused to turn them over to the agents for examination without the consent of the Matters. Virtually all of the questions asked by the agents were objected to on the basis of the attorney-client privilege.[1] Dissatisfied with the results of the hear-

ing, the government caused the appellants' pending motion to quash to come on for hearing in the district court, on February 28, 1961. Judge Dawson denied the motion and vacated the stay without opinion, and Mr. Colton and Miss Kaltman filed their notice of appeal to this court. This appeal is now before us, designated as No. 26939.

Apparently the Internal Revenue Service requested Colton to return for further questioning and he refused. The Service on March 7, 1961 served on Colton alone a new summons in substance identical to the earlier ones as modified by the stipulation. Colton again appeared on March 24, 1961, in response to this second summons, but gave the Service no more satisfaction than he had at his first appearance, again declining on the basis of the attorney-client privilege to answer certain questions concerning tax work his firm might have done for the Matters. Accordingly, the government on June 7, 1961, applied to the district court for enforcement of this second subpoena against Colton under §§ 7402 (b) and 7604 of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 7402(b), 7604. Judge Metzner granted the government's application in substance on December 28, 1961 and directed Colton to answer twenty-seven specific questions asked by agent Kurtzuk at the March 24, 1961 hearing. Colton's appeal from this order is before us in No. 27374.

With respect to No. 26939, this Court has already, on June 21, 1961, denied a motion by the government to dismiss the appeal. 291 F.2d 487. The parties are in agreement that this appeal presents no issue of law not more specifically raised by the appeal in No. 27374, except for the question whether Judge Dawson subjected the appellants to harassment forbidden by § 7605(b) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7605 (b) in permitting further examination by the Service. We hold that Judge Dawson was well within the permissible limits

1. It is agreed by the parties that the Matters had informed the Colton firm before any testimony was given that they

did not wish to waive any privilege they had as clients.

of discretion in not preventing further questioning under the circumstances. Indeed, Colton answered the second summons without apparent objection to being called again. Accordingly, we turn to the questions posed by No. 27374.

Colton now offers to answer by affidavit thirteen of the questions he objected to at the March 24, 1961 hearing, and the government has accepted the offer, making the appeal moot insofar as these questions are concerned. The remaining questions, all of which were objected to as infringing upon the attorney-client privilege, may be grouped under two general headings: those inquiring into the date and nature of the services performed by the Colton firm for the Matters, and those relating to the files of the firm which the Service sought to have Mr. Colton turn over to it.

■ At the outset, we reiterate our view, stated in In re Albert Lindley Lee Memorial Hospital, 209 F.2d 122 (2 Cir. 1953), cert. denied, 347 U.S. 960, 74 S.Ct. 709, 98 L.Ed. 1104 (1954), that questions of privilege in a federal income tax investigation are matters of federal law. See Falsone v. United States, 205 F.2d 734 (5 Cir.), cert. denied, 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953). For the reasons stated in our Albert Lindley Lee Memorial Hospital opinion, we do not agree with the Court of Appeals for the Ninth Circuit, Baird v. Koerner, 279 F. 2d 623 (1960), that a hearing held by the Internal Revenue Service under § 7602 of the Internal Revenue Code of 1954 is a "civil action" governed by state evidence law under Rule 43(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., or that state law should govern for any other reason.

■ 1. Those questions which pertain to the date and general nature of the legal services performed by the Colton firm for the Matters should be answered as they do not call for any confidential communication. The question numbered 16 in the Internal Revenue Service's transcript of the hearing, although ambiguous,[2] appears to inquire whether in 1951 the firm performed any services for the Matters other than the preparation of income tax returns. (Colton now agrees to answer the preceding question, which asked whether or not the firm had prepared, or caused to be prepared, a 1951 tax return.) Question 18 asked Colton to state the nature of the services he admitted to having rendered the Matters in the years prior to 1951. In directing Colton to answer this question, Judge Metzner limited the required information to "general responses, such as 'litigation,' 'drafting of documents,' 'tax advice' and the like," thus excluding inquiry into specific details; since the government does not here contest this interpretation, the question remains so limited for our purposes. Questions 52 and 54 inquire whether the firm performed any legal services for the Matters during 1954, 1955, 1956 and 1957. Question 55 asks whether the firm received "any remunerations" for legal services during those four years. Finally, Question 80 asks, "Did you or any member of your firm cause to have prepared a 1953 income tax return for or on behalf of Herbert and Mercedes Matter in 1954?"

■ This court has accepted, and few if any lawyers would quarrel with, Dean Wigmore's statement of the basic principle underlying the attorney-client privilege:

"In order to promote freedom of consultation of legal advisers by clients, the apprehension of compelled disclosure by the legal advisers must be removed; hence the law must prohibit such disclosure except on the client's consent." 8 Wigmore, Evidence § 2291 (McNaughton rev. 1961).

See United States v. Pape, 144 F.2d 778 (2 Cir.), cert. denied, 323 U.S. 752, 65 S.Ct. 86, 89 L.Ed. 602 (1944). It cannot

---

2. 16. Q. Did you or any member of your firm perform any services, other than the preparation of income tax returns for the year 1951 for Herbert and/or Mercedes Matter?

be seriously argued that this policy justifies any member of the bar from refusing to testify as to all transactions he may have had with any person whom he chooses to designate a "client." Thus, according to Judge Wyzanski's much quoted formulation, it must be shown that:

"(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." United States v. United Shoe Mach. Corp., 89 F.Supp. 357, 358–59 (D. Mass.1950).

There can, of course, be no question that the giving of tax advice and the preparation of tax returns—which unquestionably constituted a very substantial part of the legal services rendered the Matters by the Colton firm—are basically matters sufficiently within the professional competence of an attorney to make them prima facie subject to the attorney-client privilege. See United States v. Kovel, 296 F.2d 918 (2 Cir. 1961). But, although the word "communications" must be broadly interpreted in this context, see 8 Wigmore, Evidence § 2306 (McNaughton rev. 1961), the authorities are clear that the privilege extends essentially only to the substance of matters communicated to an attorney in professional confidence. Thus the identity of a client, or the fact that a given individual has become a client are matters which an attorney normally may not refuse to disclose, even though the fact of having retained counsel may be used as evidence against the client. United States v. Pape, 144 F.2d 778 (2 Cir.), cert. denied, 323 U.S. 752, 65 S.Ct. 86, 89 L.Ed. 602 (1944); Behrens v. Hironimus, 170 F.2d 627 (4 Cir. 1958); Goddard v. United States, 131 F.2d 220 (5 Cir. 1942); People ex rel. Vogelstein v. Warden, 150 Misc. 714, 270 N.Y.S. 362 (Sup.Ct.1934), aff'd mem. 242 App.Div. 611, 271 N.Y.S. 1059 (1st Dept. 1934); 8 Wigmore, Evidence § 2313 (McNaughton rev. 1961); McCormick, Evidence § 94 (1954). To be sure, there may be circumstances under which the identification of a client may amount to the prejudicial disclosure of a confidential communication, as where the substance of a disclosure has already been revealed but not its source. See, e. g., In re Kaplan, 8 N.Y.2d 214, 203 N.Y.S.2d 836, 168 N.E.2d 660 (1960); Baird v. Koerner, 279 F.2d 623 (9 Cir. 1960).

We find, however, no such special circumstances in the case at bar. Nor was the permissible inquiry in this regard ended when Colton stated that the Matters were his clients and had been for some time. The principle that permits inquiry into the existence of a professional relationship obviously also permits questioning as to the years during which the relationship has continued. Thus, under the accepted doctrine, there was no basis for Colton's refusal to answer Questions 52 and 54.

For similar reasons there was no basis for Colton's refusal to state, in answer to Question 55, whether he had received any remuneration from the Matters for legal services rendered during the years 1954 through 1957. Although no question as to the relevancy of the matters inquired into is before us, we note that the government states that this question is relevant to a determination whether the attorney-client relationship actually existed, as well as to the propriety of deductions for legal fees taken by the taxpayers in their returns for those years. Such matters are surely relevant, and—in the absence of allega-

tions as to special circumstances—we see no reason why an attorney should be any less subject to questioning about fees received from a taxpayer than should any other person who has dealt with the taxpayer. There is no further encroachment here upon any confidential relationship than there is in questioning about the existence or date of the relationship. In re Wasserman, 198 F.Supp. 564 (D.D.C.1961). All these matters are quite separate and apart from the substance of anything that the client may have revealed to the attorney.

Moreover, a determination whether Colton rendered legal services to the Matters in a given year is proper as a basis for obtaining further unprivileged information from him. Not all communications between an attorney and his client are privileged. Particularly in the case of an attorney preparing a tax return (as the questioning agent attempted to establish Colton did for the Matters), a good deal of information transmitted to an attorney by a client is not intended to be confidential, but rather is given for transmittal by the attorney to others—for example, for inclusion in the tax return. Such information is, of course, not privileged. 8 Wigmore, Evidence § 2311 (McNaughton rev. 1961); McCormick, Evidence § 95 (1954); e. g., United States v. Tellier, 255 F.2d 441 (2 Cir.), cert. denied, 358 U.S. 821, 79 S.Ct. 33, 3 L.Ed.2d 62 (1958).

It was also proper for agent Kurtzuk, in Questions 16 and 18, to inquire into the nature of the "legal services" rendered by Colton. Attorneys frequently give to their clients business or other advice which, at least insofar as it can be separated from their essentially professional legal services, gives rise to no privilege whatever. Lowy v. Commissioner, 262 F.2d 809 (2 Cir. 1959); Olender v. United States, 210 F.2d 795 (9 Cir. 1954); Pollock v. United States, 202 F.2d 281 (5 Cir.), cert. denied, 345 U.S. 993, 73 S.Ct. 1133, 97 L.Ed. 1401 (1953); 8 Wigmore, Evidence § 2296 (McNaughton rev. 1961). Indeed, Colton admitted at the Service hearing that he sometimes gave "a little investment advice" to his clients. Because Colton's work for the Matters—both legal and non-legal—may thus have involved unprivileged communications with them, it is proper for the Service in its search for unprivileged matters not only to inquire into the years during which he rendered "legal services" but also to explore, as it does in Questions 16 and 18, to some extent the nature of the services rendered. These questions are appropriate to a determination of what, if any, areas may be inquired into further and what is protected by the attorney-client privilege. People's Bank of Buffalo v. Brown, 112 F. 652 (3 Cir. 1902); Steiner v. United States, 134 F.2d 931, 934–35 (5 Cir. 1943); see United States v. Kovel, 296 F.2d 918, 924 (2 Cir. 1961); United States v. Pape, 144 F.2d 778, 783 (2 Cir.), cert. denied, 323 U.S. 752, 65 S.Ct. 86, 89 L.Ed. 602 (1944).[3] Judge Metzner excluded detailed inquiry into the work done. Although it would be inappropriate for us to speculate regarding those questions which might properly be asked in this area, we note that some restriction may be necessary to protect the privilege and that none of the possible responses called for by Question 18 as now limited would reveal anything which could be regarded as a communication within the meaning of the privilege doctrine. Nor do we find anything in Question 80 which calls for the revelation of any communication by the Matters.

3. Colton further argues that Question 18 is improper since it relates to events taking place in years prior to those stated in the summons to be the subject of inquiry and as to which prosecution would be barred by the statute of limitations. Evidence as to the state of the Matters' financial affairs during those years is not, however, necessarily irrelevant to prosecution for tax evasion in later years. We see no impropriety in the government's attempting to lay a basis for the possible obtaining of unprivileged information concerning those years.

2. The remaining questions, which pertain to documents and files, can be subdivided into two categories. The colloquy relating to Questions 22, 73, 74 and 75 reflects Colton's total refusal, on grounds of the attorney-client privilege, to produce "retained copies of income tax returns, workpapers, correspondence, memoranda and all other data pertaining to the preparation and filing of the [returns in question] * * *" and the fact that before and after the first hearing before the Service the firm had returned some of these papers to the Matters. The remaining questions inquire into the general nature of the papers presently or formerly in the firm's possession.

Judge Metzner ordered Colton to answer this last group of questions concerning the nature of the papers, and held that the privilege did not justify a blanket refusal to produce those documents and files still in the firm's possession. He did not require Colton to make any efforts to recapture any papers no longer in the firm's possession, and the government makes no contention here that he should have. The judge apparently also held, and in any event the government now concedes, that the privilege is still available to Colton to the extent of permitting him to withhold any particular confidential papers which were "specifically prepared by the client for the purpose of consultation with his attorney" and any of the firm's memoranda and worksheets "to the extent of any unpublished expression made by an attorney therein of confidences which had passed between him and his clients."

■■ It is self-evident that individual documents and files may still be withheld insofar as they thus are or report confidential communications between Colton and his clients, the Matters. Documentary evidence of confidential communications is necessarily privileged as much as testimonial evidence. Moreover, if a proper showing is made, Colton will be able to raise the Matters' privilege against self-incrimination as a basis for refusing to produce any independently pre-existing records or other documents turned over to the firm by the Matters if the Matters could have refused to produce them under that privilege. Application of House, 144 F.Supp. 95 (N.D.Cal.1956); 8 Wigmore, Evidence § 2307 (McNaughton rev. 1961).

■ Clearly Colton's blanket refusal on the grounds of the attorney-client privilege to produce anything was unjustified. As we have noted, the attorney-client privilege protects only those papers prepared by the client for the purpose of confidential communication to the attorney or by the attorney to record confidential communications, and Colton has not made the necessary showing that the papers he refused to produce are of such nature.

■ Insofar as the papers include pre-existing documents and financial records not prepared by the Matters for the purpose of communicating with their lawyers in confidence, their contents have acquired no special protection from the simple fact of being turned over to an attorney. It is only if the client could have refused to produce such papers that the attorney may do so when they have passed into his possession. 8 Wigmore, Evidence § 2307 (McNaughton rev. 1961); McCormick, Evidence § 93 (1954). Any other rule would permit a person to prevent disclosure of any of his papers by the simple expedient of keeping them in the possession of his attorney. Falsone v. United States, 205 F.2d 734, 739 (5 Cir.), cert. denied, 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953).

■ Appellant admits in his brief that statements, correspondence, and documents received from third parties are not protected by the attorney-client privilege, and the principle is obvious. Hickman v. Taylor, 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1947); 8 Wigmore, Evidence § 2317 (McNaughton rev. 1961). He argues, however, that in any event such papers are wholly unavailable to the government under the "work product" rule which the Supreme Court

**640**

in Hickman v. Taylor, supra, held justified an attorney's refusal to permit discovery in a civil case of statements obtained by him from prospective witnesses. We need not reach the government's contention that the work-product rule is inapplicable to such administrative investigations as that conducted by the Internal Revenue Service here, because Colton has made no suggestion that any of the papers involved were collected or prepared in anticipation of litigation, as must be shown to justify invocation of this rule. E. g., Rediker v. Warfield, 11 F.R.D. 125 (S.D.N.Y.1951); Developments in the Law—Discovery, 74 Harv.L.Rev. 940, 1030 (1961).

 Because Colton was unjustified in his blanket refusal to produce all of his firm's papers concerning the Matters, it was, of course, appropriate for agent Kurtzuk to question him at the hearing concerning the nature of the papers in order to determine which of them were and which were not privileged. All of the remaining questions are relevant to the government's proper attempt to uncover papers not protected under the attorney-client privilege. Questions 23, 25 and 76 have the identical purpose of trying to find out whether the firm's files contain documents received from or correspondence with third parties. We have already noted that papers received from third parties are unprivileged and no theory has been presented on which communications from an attorney to a third party are privileged. Question 65 inquires whether the firm's "papers contained retained copies of Herbert and Mercedes Matter's income tax returns" for the relevant years. Such copies would be unprivileged as not confidential because by definition they contain no information that was not intended to be given to the Internal Revenue Service. None of these questions call for any information which could possibly reveal protected communications. Thus these questions must be answered and the materials they refer to must be produced.

The orders of the district court are affirmed.