**UNITED STATES of America and John J. Gilligan, Special Agent of the Internal Revenue Service, Petitioners,**

v.

**William G. BAUCUS, Respondent,**

**William L. Kidd, Intervenor.**

**Civ. No. 2984.**

United States District Court,
D. Montana,
Great Falls Division.

May 17, 1974.

Otis L. Packwood, U. S. Atty., Billings, Mont., and James H. Jeffries, Jr., and John R. Eggleston, Trial Attys., Dept. of Justice, Washington, D. C., for petitioners.

Baucus, Corontzos, Iwen and Walsh, Great Falls, Mont., for respondent.

Alexander, Kuenning, Miller and Ugrin, Great Falls, Mont., for intervenor.

## ORDER AND MEMORANDUM OPINION

JAMESON, Senior District Judge.

On February 16, 1971 petitioners filed a petition to enforce an Internal Revenue Service summons to compel respondent Baucus, an attorney and certified public accountant, to appear before petitioner Gilligan to testify and produce for examination all "workpapers in connection with preparation of the income tax returns of William L. Kidd and Mary C. Kidd for the years 1966, 1967 and 1968".[1] In his answer respondent alleged that all work papers in his possession constitute privileged communications "based on an attorney-client relationship".

Taxpayer William L. Kidd moved to intervene and to quash the summons on the grounds that the work papers (1) were protected by the attorney-client privilege, and (2) were in the possession of Baucus as a custodian only and were prepared and owned by taxpayers, and their production would violate taxpayers' Fifth Amendment privilege against self-incrimination.

A hearing was held on March 2, 1971. In an order and memorandum opinion issued July 23, 1971 the taxpayer's motion to intervene was granted and it was held that (1) Kidd could assert his privilege against self-incrimination with respect to the work papers on the ground that he was in "constructive possession" of them; (2) the tax returns in question were prepared by Baucus in his capacity as an attorney; and (3) an attorney-client relationship existed between Baucus and Kidd and protected communications between them which were intended to be confidential.

Noting that some of the material contained in the work papers might not be privileged because it "was intended to be included in Kidd's income tax returns" and thus was "not intended to be confidential", petitioners were granted 20 days to submit appropriate interrogatories "to compel Baucus to disclose the nonconfidential matter".[2] The order also provided that "If no interrogatories are submitted within 20 days, the motion to quash summons will be granted and the proceeding dismissed * * *."

By order entered August 12, 1971 petitioners were granted an additional 20

---

1. The proceeding was instituted pursuant to 26 U.S.C. §§ 7402(b) and 7604(a) to enforce a summons issued under the authority of 26 U.S.C. § 7602.

2. This was the procedure followed in the leading case of Colton v. United States, 306 F.2d 633, 638 (2 Cir. 1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963), discussed *infra*, and other cases.

days to submit interrogatories. Subsequently the court was advised that petitioners "have concluded that no interrogatories will be submitted". Accordingly the court entered judgment on October 19, 1971, granting the motion to quash the summons, denying the petition to enforce it and dismissing the proceedings. Petitioners filed their notice of appeal on December 15, 1971.

During the pendency of the appeal the Supreme Court on January 9, 1973 decided Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), which involved an Internal Revenue Service summons and the question of "whether the taxpayer may invoke her Fifth Amendment privilege against compulsory self-incrimination to prevent the production of her business and tax records in the possession of her accountant". 409 U.S. at 323, 93 S.Ct. at 613. The Court reiterated its former holdings "that the Fifth Amendment privilege is a *personal* privilege: it adheres basically to the person, not to information which may incriminate him", *Id.* at 328, 93 S.Ct. at 616 (emphasis by the Court), and sustained enforcement of the summons.[3]

In a memorandum entered December 17, 1973 the Court of Appeals for the Ninth Circuit reversed and remanded

the "judgment of the District Court for the purpose of having that Court determine whether, in light of *Couch*, Kidd retained constructive possession of the work papers".

Nothing that "in *Couch* the records were in the actual possession of an accountant, while here Baucus is an attorney", the court "considered whether affirming would be proper in view of the fact that we accept the existence of the attorney-client relationship between Baucus and Kidd", but concluded "that the present state of the record does not permit this action". It was, however, recognized "as a possibility" that the district court might find, "after re-examining its holding regarding constructive possession, that the attorney-client privilege is under the facts sufficient to quash the summons".[4]

Following remand this court by letter dated December 28, 1973 inquired whether counsel wished "to present additional evidence in the light of *Couch*" or "to file supplemental briefs and possibly present oral argument". Counsel for all parties advised the court that they did not desire to present further testimony. Supplemental briefs were filed and pursuant to petitioners' request the case was set for oral argument on March 25, 1974.

3. The Court said in part:
"We do indeed believe that actual possession of documents bears the most significant relationship to Fifth Amendment protections against state compulsions upon the individual accused of crime. Yet situations may well arise where constructive possession is so clear or the relinquishment of possession is so temporary and insignificant as to leave the personal compulsions upon the accused substantially intact. But this is not the case before us. Here there was no mere fleeting divestment of possession: the records had been given to this accountant regularly since 1955 and remained in his continuous possession until the summer of 1968 when the summons was issued. Moreover, the accountant himself worked neither in petitioner's office nor as her employee. The length of his possession of petitioner's records and his independent status confirm the belief that petitioner's divestment of

possession was of such a character as to disqualify her entirely as an object of any impermissible Fifth Amendment compulsion." (Footnotes omitted) *Id.* at 333–335, 93 S.Ct. at 618.

4. Judge Ely filed a concurring opinion in which he stated:
"Believing that the facts of *Couch* are clearly distinguishable from the facts of the case at hand, I would, if I could act alone, affirm the challenged judgment * * * without further ado. One critical distinction, noted by the majority, is that in *Couch*, the records sought were those of an accountant, whereas, in our case, the material involved was the work product of an attorney. It has always been recognized that the relationship between an attorney and his client is characterized by confidentiality of the highest quality."

On the morning of March 25, just prior to oral argument, the court learned that on August 7, 1973 Kidd had entered a plea of *nolo contendere* to one count of a three count indictment which charged Kidd with having filed false and fraudulent income tax returns for the years in question in this case—1966, 1967 and 1968.[5] At the hearing the court asked counsel whether the criminal proceedings had rendered the case moot. Counsel for both Kidd and petitioners agreed in open court that the issue concerning Kidd's claim of the privilege against self-incrimination through constructive possession of the work papers is now moot, but that because of the possibility of civil penalties there remained for determination the issue of whether the attorney-client privilege is under the facts sufficient to re-affirm the judgment of October 19, 1971.

Since the issue of constructive possession is now moot,[6] there remains for consideration the single question of whether the "attorney-client privilege is under the facts sufficient to quash the summons". As noted *supra*, the Court of Appeals accepted "the existence of the attorney-client relationship between Baucus and Kidd". Petitioners accordingly do not contest the finding that the tax returns were prepared by Baucus as an attorney.[7] Rather they argue that "there is no attorney-client privilege when the attorney merely prepares tax returns".

This court recognized in its initial opinion that material contained in the work papers intended for disclosure in the tax returns would not be subject to the attorney-client privilege since it was "not intended to be confidential". On the other hand, it was recognized also that the work papers may contain information which will not be incorporated in the tax returns and which is protected by the attorney-client privilege. It was concluded accordingly that "as long as adequate means, such as interrogatories, exist to compel Baucus to disclose the non-confidential matter, he should not be required to produce direct communications from the client because of the danger that confidential matter will also be revealed." The opinion noted that Colton v. United States, *supra*, "set forth certain guidelines concerning the attorney-client privilege in the preparation of income tax returns which may be appropriate here". Petitioners were given an opportunity to submit appropriate interrogatories but declined to do so.[8]

The principles to be followed in determining whether matter is subject to the attorney-client privilege were well sum-

---

5. Kidd was sentenced to two years imprisonment and fined $1,000; and the execution of the sentence of imprisonment was suspended and the defendant placed on probation for one year. The remaining counts of the indictment were subsequently dismissed.

6. In the court's letter to counsel it was suggested that they might wish to consider also In re Horowitz, 482 F.2d 72 (2 Cir. 1973) and other cases decided subsequent to *Couch.* The briefs were devoted primarily to the effect of *Couch* and other cases on the issue of constructive possession, rather than whether the material was privileged by reason of the attorney-client relationship.

7. In its original opinion this court relied upon three critical factors in concluding that Baucus prepared the tax returns in his capacity as an attorney: "(1) Baucus at all times has held himself out primarily as an attorney and has been engaged actively in the practice of law; (2) it appears from his testimony that initially he was hired in his capacity as an attorney by reason of legal problems; and (3) he ceased to hold himself out to the public as a certified public accountant sometime prior to 1966 and prior to the preparation of any of the income tax returns in question."

8. The opinion reads in part:
"In *Colton* the court passed upon interrogatories submitted to the attorney * * *. * * * It would seem that if petitioners conclude that in the light of this opinion there are matters which would not be privileged under the attorney-client relationship, appropriate interrogatories could be submitted, with the respondent and intervenor given an opportunity to object to any interrogatories they deemed improper. Both parties would then have an opportunity to submit authorities in support of their respective positions."

marized by Judge Lumbard in *Colton, supra*, 306 F.2d at 637–639:

"There can, of course, be no question that the giving of tax advice and the preparation of tax returns * * * are basically matters sufficiently within the professional competence of an attorney to make them prima facie subject to the attorney-client privilege. * * * But, although the word 'communications' must be broadly interpreted in this context, see 8 Wigmore, Evidence § 2306 (McNaughton rev. 1961), the authorities are clear that the privilege extends essentially only to the substance of matters communicated to an attorney in professional confidence. * * *

"Not all communications between an attorney and his client are privileged. Particularly in the case of an attorney preparing a tax return * * *, a good deal of information transmitted to an attorney by a client is not intended to be confidential, but rather is given for transmittal by the attorney to others—for example, for inclusion in the tax return. Such information is, of course, not privileged. 8 Wigmore, Evidence § 2311 (McNaughton rev. 1961) * * *.

"It is self-evident that individual documents and files may still be withheld insofar as they thus are or report confidential communications between Colton and his clients, the Matters. Documentary evidence of confidential communications is necessarily privileged as much as testimonial evidence. * * *

"Clearly Colton's blanket refusal on the grounds of the attorney-client privilege to produce anything was unjustified. As we have noted, the attorney-client privilege protects only those papers prepared by the client for the purpose of confidential communication to the attorney or by the attorney to record confidential communications, and Colton has not made the necessary showing that the papers

he refused to produce are of such nature."

Accepting the rule in *Colton* that "[a]ny communication by the client with the understanding that the information would be inserted in the return must be divulged", the court in United States v. Threlkeld, 241 F.Supp. 324, 326–327 (W.D.Tenn.1965) said in part:

"Information communicated by the client with the direction that it not be inserted in the return or with the direction that it be, or not be, so inserted in the discretion and judgment of respondent need not be divulged unless respondent has heretofore voluntarily divulged the contents of the communication to an Internal Revenue agent in the course of respondent's representation of the client. If respondent has heretofore so divulged the contents of a communication, he has, within the scope of his authority, in effect waived the privilege. 8 Wigmore, Sec. 2325."

An article in a recent issue of Hofstra Law Review (Vol. 2, 1974) by Stuart J. Filler, entitled "Protecting Your Client: Advice to Accountants and Attorneys", suggests that *Colton* adopted a "realistic approach to the availability of the attorney-client privilege to tax return preparation", and that the test applied in *Threlkeld* "would adequately protect taxpayer's confidential communications". The author continues:

"The district court judge can administer the test with *in camera* inspection of the documents. In those cases where the taxpayer is sufficiently knowledgeable about the federal income tax law that he can either orally or by workpapers transmit to the attorney information to be specifically inserted on the income tax return, it would be difficult to argue that the taxpayer is seeking legal advice from the attorney or that transferring such information onto the income tax return would be within the professional competence of the attorney. The converse is also true. In those cases

where the taxpayer either orally, by tax records, or by workpapers transmits raw data to an attorney for the attorney to use his discretion to determine what portion of such information to insert on the income tax return, it would be difficult to argue that the taxpayer is seeking anything other than legal advice from the attorney."

In United States v. Schmidt, 360 F. Supp. 339, 348 at n. 26 (M.D.Pa.1973), the court suggested *in camera* inspection by the court, saying in part:

"In evaluating whether a particular communication was intended to be confidential, it would be self-defeating to compel disclosure of the very information which the privilege is designed to protect.

"In a prior reported decision, the court indicated that, in its opinion, this dilemma could be resolved most equitably if respondents were to submit, for *in camera* inspection, affidavits setting forth the responses which would be made but for the existence of the asserted privilege, and the factual bases upon which they predicate their contention that the information is confidential. United States v. Schmidt, M.D.Pa.1972, 343 F.Supp. 444."

Other cases endorsing this procedure were cited, and the court said further:

"However, due to uncertainty whether *in camera* perusal might impinge upon the subjective freedom of consultation which the privilege encourages, submission of the requested affidavits was made discretionary." *Id.*

In support of their contention that there is no attorney-client privilege with respect to material furnished to an attorney for the purpose of preparing tax returns, petitioners in their supplemental brief rely primarily on United States v. Gurtner, 474 F.2d 297 (9 Cir. 1973). In *Gurtner* the defendant taxpayer contended that the district court should have stricken the testimony of an accountant on the ground that taxpayer's conversations with the accountant were privileged by virtue of the fact that the account was an agent of the taxpayer's attorney. In rejecting this contention the court noted that "Gurtner did not prove that [the accountant] was acting as a consultant for his attorney." 474 F.2d at 299. The court quoted from United States v. Kovel, 296 F.2d 918, 922 (2 Cir. 1961): " 'What is vital to the privilege is that the communication be made *in confidence* for the purpose of obtaining *legal* advice *from the lawyer.* If what is sought is not legal advice but only accounting service, * * * or if the advice sought is the accountant's rather than the lawyer's, no privilege exists.' " *Id.*, 474 F.2d at 298–299. The court continued:

"Moreover, even if we assumed that Foulk was the agent of an attorney, not all consultations with such agents are privileged. Gurtner's consultations with Foulk for the purpose of preparing tax returns did not fall within the privilege. Such consultations, even with an attorney who is preparing the returns, are not privileged. *Olender, supra* [Olender v. United States, 210 F.2d 795 (9th Cir.)], 210 F.2d at 806; Canaday v. United States, 354 F.2d 849, 857 (8th Cir. 1966); Couch v. United States, 405 U.S. 1038, 92 S.Ct. 1311, 31 L.Ed. 2d 579 (1973)." *Id.* at 299.

In the three cases cited in *Gurtner* the preparer of the tax returns was found to be acting as an accountant. *Olender,* which was discussed at some length and distinguished in the original opinion, involved testimony concerning communications made by the taxpayer to Charles R. Ringo, an accountant-attorney, in conjunction with the preparation of tax returns and a net worth statement. The court rejected the taxpayers claim of attorney-client privilege, since, as stated by the trial court, " 'there is no evidence at all that the gentleman, Mr. Ringo, at any time functioned as a lawyer, or in fact the defendant employed him as a lawyer. He was employed as an accountant solely and simply.' " 210 F.2d

at 806. In *Canaday, supra,* 354 F.2d at 857, it was held that an attorney-client relationship had not been established where the attorney "acted not as a lawyer, but merely as a scrivener for defendant". Finally, as noted *supra, Couch* involved an accountant, with respect to which the Court noted that "no confidential accountant-client privilege exists under federal law, and no State-created privilege has been recognized in federal cases * * *." 409 U.S. at 335, 93 S.Ct. at 619.

*Gurtner* was cited to the Court of Appeals in a supplemental letter, and petitioners relied on *Olender* and *Canaday* in their brief on appeal. It is clear that the Court of Appeals did not deem these cases controlling in view of its suggestion that "It may be that the District Court will find, after reexamining its holding regarding constructive possession, that the attorney-client privilege is under the facts sufficient to quash the summons."

As noted *supra,* however, the Court of Appeals concluded that the "present state of the record" did not permit its affirming on the basis of the attorney-client relationship. It is now necessary to consider further the proceedings at the initial hearing in the light of subsequent rulings by this court and the appellate court, as well as Kidd's conviction.

At the initial hearing Baucus and Kidd both relied primarily on their contention that Kidd had constructive possession of the work papers, as this court later found. Kidd claimed his Fifth Amendment privilege against self-incrimination, and on this ground Baucus was not required to produce *any* of the work papers. The issue of constructive possession *is now moot,* but this could not be determined until the last hearing on March 25, 1974.

At the initial hearing petitioners relied to a large extent upon their conten-

tion that Baucus was acting as an accountant and that there was no attorney-client privilege. This issue was resolved against petitioners by this court and accepted by the Court of Appeals.

By reason of their respective contentions at the initial hearing, quite understandably none of the parties sought to elicit with any particularity the nature of the work papers in Baucus' possession. Rather when counsel for Kidd asked Gilligan what information he wished to seek from Baucus, counsel for petitioners interposed an objection. Likewise, when counsel for petitioners asked Baucus, "Without getting into detail, can you tell me the general nature of the information on the workpapers", an objection was interposed by counsel for Kidd. While limited examination was permitted over the respective objections, it is now apparent that it can not be determined from the record before the court what materials may be subject to the attorney-client relationship. With the issue of constructive possession by the taxpayer moot and the attorney-client relationship established, it is necessary to determine whether all of the work papers were furnished to Baucus solely for inclusion in the tax returns and not intended to be confidential. If not, it must be determined which papers were communicated to Baucus in professional confidence.

It is clear that the person seeking to preclude disclosure has the burden of establishing the existence of an attorney-client relationship. United States v. Gurtner, *supra,* 474 F.2d at 298. The existence of the relationship having been established, as here, the question of whether particular communications and documents are privileged may be determined (1) through interrogatories submitted by the Government; [9] (2) *in camera* inspection of documents, supported by an affidavit of the taxpayer or his attorney; (3) a hearing in open court where the taxpay-

---

9. *Colton, supra,* considers specific question submitted by an agent of the Internal Revenue Service; and United States v. Schmidt, *supra,* contains as an appendix all of the proposed questions submitted by the agent. In both of these cases, however, the court was concerned also with the existence of the attorney-client relationship.

er and attorney may be interrogated; or (4) a combination of these procedures.

Possibly the parties can agree upon which of the work papers are privileged in the light of the foregoing conclusions and the guidelines suggested in the authorities cited, or upon further discovery through interrogatories and *in camera* inspection of the work papers, with affidavits of respondent and intervenor setting forth in detail the basis of their claim of privilege. If not, the case will be set for further hearing at a time convenient for court and counsel.

Counsel are requested to confer and then report to the court not later than June 3, 1974 their views with respect to further proceedings.