In the Matter of GRAND JURY SUB-POENAS DATED APRIL 19, 1978.

No. 78-C-911.

United States District Court,
E. D. New York.

June 22, 1978.

Gail S. Benson, pro se.

S. Allen Early, pro se.

David G. Trager, U. S. Atty., E.D.N.Y. by Rhonda C. Fields, Asst. U. S. Atty., Brooklyn, N. Y.

## MEMORANDUM AND ORDER

COSTANTINO, District Judge.

This is a motion brought by Gail Benson and S. Allen Early ("the movants"), attorneys from Detroit, Michigan, to quash, on the grounds of attorney-client privilege, subpoenas directing them to give testimony before a grand jury in this district.

On November 18, 1977, Gloria Roe, Sandra Jones and Harold Morton were arrested for the unlawful importation of heroin into the United States. Roe and Jones were subsequently indicted and the complaint against Morton was dismissed on the government's motion. On December 5, 1977, Gail Benson, one of the movants herein, filed a notice of appearance on behalf of both Roe and Jones, and listed a local attorney as co-counsel. On that same day Roe and Jones were released on bail. Roe returned to Detroit and Jones went to California, where she was found shot to death in execution style on December 11, 1977. Ms. Benson was informed by the govern-ment of Jones' death and an offer of protection was extended to Ms. Roe.

On February 22, 1978, following a suppression hearing, Ms. Roe pled guilty to all counts of the indictment. She was subsequently summoned before the grand jury where she asserted her Fifth Amendment privilege against self-incrimination. She was then ordered to testify under a grant of immunity. Ms. Benson returned to Detroit immediately following the grand jury proceeding, having first given the government permission to speak to Ms. Roe about protective custody without Ms. Benson being present.

Ms. Roe stated that she desired protection for herself and her family, and that she wished to cooperate with the government. She also stated that she had not retained Ms. Benson to represent her and did not know who had retained Ms. Benson. Ms. Roe stated further that she had asked Ms. Benson who had retained her and Ms. Benson said she did not know. Ms. Roe has been in protective custody since February 22, 1978. Ms. Benson has apparently stated to Assistant United States Attorney Rhonda Fields that she did not know who had retained her firm to represent Ms. Roe, but that there was no possibility of a conflict of interest in such representation. On April 13, 1978 Ms. Benson filed a motion to be relieved as counsel for Ms. Roe, and on May 12, 1978, the date on which Ms. Benson and Mr. Early, another member of her firm, were to appear before the grand jury, the instant motion to quash was made.

The questions that the government wishes to ask Ms. Benson and Mr. Early are as follows:

(1) Who retained Ms. Benson and Mr. Early to represent Gloria Roe?

  (a) the identity of that person and his address;

  (b) if the identity is not known, how was payment made and from whom?

(2) Did Harold Morton or anyone associated with him have anything to do with the retainer?

(3) Did anyone outside the law firm have any input into the decision to return Sandra Jones to Detroit following her release on bail from this district, and if so, who?

(4) Was Harold Morton represented by the firm?

(a) If not, was he at the firm's office before the release of Roe and Jones?

(b) Was he at the firm's office following the release of Roe and Jones?

(5) Were you (Benson and/or Early) present during any conversations between Jones, Roe and Morton?

(a) if so, did you ever hear Morton ask Jones if she could "do time" or "take the weight," meaning did he ever ask her if she would be able to be prosecuted without offering cooperation to the government?

(b) if so, what was her response to that question?

Benson and Early seek to quash the subpoenas not on the basis of any attorney-client privilege running to Roe but rather on the basis of an attorney-client privilege asserted on behalf of an unidentified third person.

According to Mr. Early, following the arrest of Roe, Jones and Morton, he consulted with a person whom he refused to identify and gave that person legal advice. He was the only person to whom Early ever spoke in connection with the case. Subsequently, Ms. Benson came to New York to consult with and represent Roe and Jones. Early never came to New York in connection with this case prior to answering the grand jury subpoena involved in this motion. It is the "consultation" with the unidentified third person that the movants claim gives rise to an attorney-client privilege protecting the information sought by the government.

■ It is by now axiomatic that the burden of establishing the existence of the attorney-client relationship rests on the party claiming the privilege, *United States v. Stern*, 511 F.2d 1364 (2d Cir. 1975); *In re Bonanno*, 344 F.2d 830 (2d Cir. 1965); *United States v. Kovel*, 296 F.2d 918 (2d Cir.

1961). That burden "is not of course, discharged by mere conclusory or ipse dixit assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." *In re Bonanno, supra* at 833. *See also Colton v. United States*, 306 F.2d 633, 636–37 (2d Cir. 1962) ("It cannot be seriously argued that this policy [underlying the attorney-client privilege] justifies any member of the bar from refusing to testify as to all transactions he may have had with any person whom he chooses to designate a 'client.' "). At the argument on the motion to quash the instant subpoenas, movant Early was unwilling to state very much more on the question of the formation of the claimed attorney-client relationship between the movants and the unidentified third party than that he had consulted with and given advice to the third party. There is nothing to indicate that the third party ever retained the movants' law firm to represent *him*; there is only the inference that he retained the firm to represent Roe and Jones. It is therefore difficult for the court to determine whether an attorney-client relationship existed between the movants and the unidentified third party. Even if such a relationship did exist, however, the information which the government seeks would not be privileged.

■ The movants concede, as they must, that even where an attorney-client privilege does exist, as a general rule the fact of retainer and the identity of the client are not privileged. *United States v. Pape*, 144 F.2d 778, 782 (2d Cir. 1944). *See also In re Grand Jury Proceedings*, 517 F.2d 666, 670–71 (5th Cir. 1975) and cases cited at n. 2 therein. They argue, however, that *Baird v. Koerner*, 279 F.2d 623 (9th Cir. 1960), which enunciated an exception to the general rule, is applicable in this case so that the information sought by the government is privileged.

*Baird* involved an Internal Revenue Service summons seeking disclosure of the identity of the clients on whose behalf the witness-attorney had made an anonymous tax payment. The court found that disclo-

972

sure of the clients' identities would almost automatically implicate them in a crime, since the mere fact of retaining an attorney to make such a tax payment "indicates a feeling of guilt for nonpayment of taxes." 279 F.2d at 633. The court concluded that "[t]he names of the clients are useful to the government for but one purpose—to ascertain which taxpayers think they were delinquent, so that it may check the records for that one year or several years." *Id.* In those particular circumstances, the court held that the identity of the client was privileged.

In *In re Grand Jury Proceedings, supra,* the Fifth Circuit rejected the lower court's interpretation of *Baird* that the identity of a client and the fee arrangement are privileged only when disclosure would lead *automatically* to conviction for a criminal offense. Rather, the Fifth Circuit held that where disclosure would be "directly relevant to corroborating or supplementing already-existing incriminating information," 517 F.2d at 674, then the identity of the client and the fee arrangement would be privileged.

The movants herein urge the court to apply the standard set down in *In re Grand Jury Proceedings, supra.* However, that standard appears to be at variance with the test set down by the Court of Appeals for the Second Circuit in *Colton v. United States, supra* at 637 (2d Cir. 1962). There the court held that

the authorities are clear that the privilege extends essentially only to the substance of matters communicated to an attorney in professional confidence. Thus the identity of a client, or the fact that a given individual has become a client are matters which an attorney normally may not refuse to disclose, *even though the fact of having retained counsel may be used as evidence against the client.* [citations omitted] [emphasis added].

While the court in *Colton* recognized that there may be special circumstances that may require non-disclosure of a client's identity, "as where the substance of a disclosure has already been revealed but not its source," 306 F.2d at 637, this court finds that no such special circumstances exist here.

Furthermore, the government has submitted to the court an affidavit, which will be sealed pursuant to the government's request, strongly indicating that the movants' law firm was retained pursuant to an ongoing criminal enterprise to distribute narcotics and that the firm was retained in an effort to conceal the conspiracy, to obstruct justice, and to deprive Sandra Jones of her civil rights by causing her death. These are the very activities being investigated by the grand jury which subpoenaed Benson and Early.[1] It is well-settled that the attorney-client privilege does not apply "where legal representation was secured in furtherance of intended, or present, continuing illegality," *United States v. Hodge and Zweig,* 548 F.2d 1347, 1354 (9th Cir. 1977) and cases cited therein; *Colton v. United States, supra* at 637, "even where the attorney is completely unaware that his advice is sought in furtherance of such an improper purpose." *United States v. Hodge and Zweig, supra* at 1354.

■ With respect to the questions involving conversations between Harold Morton, Roe and Jones, the court finds that the claim of attorney-client privilege is improperly made. There is no indication anywhere in the record that Harold Morton was ever represented by the movants' law firm. Even assuming that there was an attorney-client privilege existing between the movants and the "unidentified third party" referred to previously, there is nothing in the record to show that the third party is Harold Morton. It is clear beyond peradventure that if the movants did not represent Harold Morton, nothing he may have said to them or in their presence would be privi-

1. There is nothing in the affidavit to suggest, and the court does not imply, that the movants were aware that they were being used in this manner by the party who retained them to represent Roe and Jones.

leged. Even if the movants did represent Morton, however, the answers to the questions which the government proposes to ask would not be privileged.

■ According to the formulation accepted by the Court of Appeals for the Second Circuit in *Colton v. United States, supra,* the following factors must be present to give rise to the appropriate exercise of the attorney-client privilege:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

306 F.2d at 637, quoting from *United States v. United Shoe Machine Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950) (Wyzanski, J.).

Since the government seeks information about communications between Morton and *Roe* and *Jones,* rather than communications between Morton and Benson and/or Early, the second factor enumerated above is absent. The third factor set forth by the Second Circuit in *Colton, supra,* is likewise absent, since the communications about which the government seeks to question the movants were not for any of the purposes enumerated in sections (3)(c)(i), (ii), or (iii) of the court's formulation, but may well have been for the purpose of committing a crime, namely concealment of the drug conspiracy involved and obstruction of justice.

As previously discussed, the government has presented evidence tending to indicate that the alleged conversations between Morton, Roe and Jones were designed to further the criminal activity in which they were involved. Therefore, the attorney-client privilege, even if otherwise applica-

ble, would not protect those communications. *United State v. Hodge and Zweig, supra.*

In light of the foregoing discussion and analysis, the court finds that the assertion of the attorney-client privilege with respect to the questions the government proposes to ask the movants is improper. The movants are therefore ordered to appear before the grand jury, at a time to be set by the government, and to respond to those questions. So ordered.