**Application of John DOE, a witness before a Grand Jury for the Southern District of New York.**

**No. M–11–188.**

United States District Court,
S. D. New York.

Feb. 5, 1979.

**OPINION AND ORDER**

PIERCE, District Judge.

This is an application to quash a grand jury subpoena directed to John Doe, an attorney. The attorney was called before a federal grand jury for the Southern District of New York and was asked what legal fees he received in 1977 and 1978 from his client Richard Roe. The grand jury is apparently investigating an extortion scheme in which Roe is suspected of having been a participant. From 1976 to the present, John Doe has represented Roe in connection with criminal charges before New York State Supreme Court and the United States District Court for the Eastern District of New York. It is undisputed that these latter charges are unrelated to the grand jury investigation.

John Doe has moved to quash the grand jury subpoena on the ground that the infor-

mation regarding fees received from Roe is protected by the attorney-client privilege. The government opposes this application.

Initially, it is helpful to repeat Judge Wyzanski's comprehensive formulation of the basic elements necessary to establish a claim of attorney-client privilege:

"(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass. 1950).

Against this backdrop, it has been repeatedly stated that "in the absence of unusual circumstances, the fact of a retainer, the identity of the client, the conditions of employment and the amount of the fee do not come within the privilege of the attorney-client relationship." *In re Semel,* 411 F.2d 195, 197 (3d Cir.), *cert. denied,* 396 U.S. 905, 90 S.Ct. 220, 24 L.Ed.2d 181 (1969); *accord, In re Michaelson,* 511 F.2d 882, 888 (9th Cir.), *cert. denied,* 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975); *Colton v. United States,* 306 F.2d 633, 638 (2d Cir.), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1962). The reason given is that the privilege is limited to confidential communications and "a retainer is not a confidential communication, although it cannot come into existence without some communication between the attorney and the—at that stage prospective—client." *United States v. Pape,* 144 F.2d 778, 782 (2d Cir. 1944).

However, as with most general rules, there are exceptions. "The privilege may be recognized when so much of the actual communication has already been disclosed [not necessarily by the attorney, but by independent sources as well] that identification of the client [or of fees paid] amounts to disclosure of a confidential communication." *United States v. Jeffers,* 532 F.2d 1101, 1115 (7th Cir. 1976), *rev'd in part on other grounds,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), quoting *NLRB v. Harvey,* 349 F.2d 900, 905 (4th Cir. 1965). Examples of such exceptions include: where an attorney returns a murder weapon to the police (*In re Michaelson,* 511 F.2d 882, 888 (9th Cir.), *cert. denied,* 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975)) or where an attorney pays additional tax on behalf of undisclosed clients (see *Baird v. Koerner,* 279 F.2d 623 (9th Cir. 1960)). In either situation, it has been held that the attorney need not disclose the identity of his client. The distinguishing feature in these exceptions is that identification of the client results in a prejudicial disclosure of a confidential communication since, although the substance of the disclosure has already been revealed, its source has not.

Petitioner contends that this case falls within this area of exceptions and urges the Court to adopt the standard that "information, not normally privileged, should also be protected when so much of the substance of the communications is already in the government's possession that additional disclosures would yield substantially probative links in an existing chain of inculpatory events or transactions." *In re Grand Jury Proceedings,* 517 F.2d 666, 674 (5th Cir. 1975) (hereinafter cited as *"Jones"*). Petitioner argues that providing information regarding his fees would yield such "probative links" leading to his client's indictment. Petitioner thus asserts that any communications which would incriminate his client are within the exceptions and protected by the attorney-client privilege.

 The general purpose of the attorney-client privilege is "to promote freedom of consultation of legal advisers by clients." 8 Wigmore, *Evidence* § 2291, at 545 (McNaughton rev. ed. 1961). "To this end the client must be assured that information

conveyed in confidence to the attorney will not be ordinarily disclosed. Arrayed against this consideration is the public interest in obtaining disclosure of every man's evidence." *In re Stolar,* 397 F.Supp. 520, 524 (S.D.N.Y.1975). The privilege must be shaped and the balance struck accordingly based on the facts of a particular case. See *Mauch v. Commissioner of Internal Revenue,* 113 F.2d 555, 556 (3d Cir. 1940).

In *Jones,* the Fifth Circuit recognized that

> "The cases applying the exception have carved out only a limited and rarely available sanctuary, which by virtue of its very nature must be considered on a case-to-case basis. It could hardly be otherwise, since the purpose of privilege—to suppress truth—runs counter to the dominant aims of the law." *In re Grand Jury Proceedings,* 517 F.2d 666, 671–72 (5th Cir. 1975).

While petitioner urges the Court to adopt the standard set forth in *Jones,* the Court notes that a Court in this Circuit has expressly rejected such a standard as varying from that established by the Second Circuit in *Colton v. United States,* 306 F.2d 633 (2d Cir.), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1962). See *In re Grand Jury Subpoenas Dated April 19, 1978,* 451 F.Supp. 969 (E.D.N.Y.1978). Further, the Fifth Circuit itself added the caveat that its

decision "should not be taken as any indication of how we would decide a similar question if the inculpatory value of sought after testimony were less obvious or largely attenuated." *In re Grand Jury Proceedings,* 517 F.2d 666, 675 (5th Cir. 1975).

Both the Eastern District of New York and the Fifth Circuit cases involved the identification of clients not known to the government.[1] The basic fact situation was that unidentified third parties paid the fees for an attorney to represent another person known to the government. The government sought the disclosure of the identities of those third persons. The Fifth Circuit held that disclosure was protected by the attorney-client privilege; the Eastern District held that it was not. The Fifth Circuit held that it was not necessary to the availability of the privilege that disclosure would lead automatically to conviction for a criminal offense. The Eastern District disagreed with the Fifth Circuit in the latter's ruling that information would be privileged when it was "directly relevant to corroborating or supplementing already-existing incriminating information." *In re Grand Jury Subpoenas Dated April 19, 1978,* 451 F.Supp. 969, 972 (E.D.N.Y.1978). The Eastern District of New York, citing *Colton v. United States,* 306 F.2d 633 (2d Cir.), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1962),[2] essentially found that the identity

---

1. The third parties would have to be clients in order to come within the purview of the attorney-client privilege. See *United States v. Lee,* 107 F. 702 (C.C.E.D.N.Y.1901). In *Jones,* the government's claim that the third parties were not clients was apparently raised for the first time on appeal and the Fifth Circuit considered the issue waived. *In re Grand Jury Proceedings,* 517 F.2d 666, 675 (5th Cir. 1975). Judge Constantino, in the Eastern District case, emphasized that the burden of proving the existence of the attorney-client relationship rests on the party claiming the privilege and is not discharged by conclusory allegations by the attorney that the third party is a client. Judge Constantino noted that "There is nothing to indicate that the third party ever retained the movants' law firm to represent *him* . . . ." *In re Grand Jury Subpoenas Dated April 19, 1978,* 451 F.Supp. 969, 971 (E.D.N.Y.1978). However, the Judge did not base his decision on this point and stated "Even if such a relationship did exist, however, the information

which the government seeks would not be privileged." *Id.*

2. In *Colton v. United States,* 306 F.2d 633 (2d Cir.), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1962), the Internal Revenue Service requested tax counsel to answer certain questions, one of which asked for the amount of legal fees paid by certain named taxpayers. The attorney refused to answer based on the grounds of the attorney-client privilege. The Court held that the privilege was not applicable, stating in relation to the question on the amount of legal fees:

> "There is no further encroachment here upon any confidential relationship than there is in questioning about the existence or date of the relationship. . . . All these matters are quite separate and apart from the substance of anything that the client may have revealed to the attorney." *Id.* at 638.

of the client, although potentially incriminating, was not a matter communicated in professional confidence, absent special circumstances. The Eastern District found no special circumstances in that fact situation.[3]

Upon the facts of the present case, the Court need not choose either the Fifth Circuit or the Eastern District of New York standards. The fact situation of *Baird v. Koerner,* 279 F.2d 623 (9th Cir. 1960), upon which the *Jones* case relied, was that of an attorney who transmitted volunteer payments on behalf of unidentified taxpayers. In both this taxpayer situation and the situation of the unidentified third party client (*Jones* and Eastern District of New York case) the disclosure of the identity of the client would lead ultimately to disclosure of that person's motive for either paying taxes or paying the fees of an attorney to represent another. Thus, disclosure of the identity of the client in those cases can be said to be disclosure of a "communication as to . . . the ultimate motive of the litigation [which] is legally protected with others, so far as any policy of privilege is concerned." 8 Wigmore, *Evidence* § 2313, at 609–10 (McNaughton rev. ed. 1961); see *Tillotson v. Boughner,* 350 F.2d 663, 666 (7th Cir. 1965). The actions of the unidentified client might indicate a "feeling of guilt" which would in all likelihood lead to investigation of that person. See *Baird v. Koerner,* 279 F.2d 623, 633 (9th Cir. 1960). Absent the attorney's disclosure of the identity of the client, the government might never investigate that person. That consideration must be weighed against the public's need for the information. In the Eastern District case, for example, it could be said that the public's need outweighed the attorney-client privilege. One of the defendants, for whom the unidentified third

party had paid the attorney's fees and bail, was found "shot to death in execution style"; another defendant was in protective custody. *In re Grand Jury Subpoenas Dated April 19, 1978,* 451 F.Supp. 969, 970 (E.D. N.Y.1978). Neither defendant knew who had paid the attorney's fees or bail money. It was likely that the identity of the third party would facilitate protection of the latter defendant. On the other hand, the Fifth Circuit, based upon the facts with which it was presented, decided that the need to protect the client's motive outweighed the public's need to know.

The circumstances in the present case are substantially different. Here, the client is known and his motive is not an element that will necessarily be revealed. The fact situation of the present case is much closer to that of attorneys for identified taxpayers who are being investigated by the Internal Revenue Service.[4] There, the taxpayers are known and the amount of fees which they have paid their attorneys has generally been held to be without the attorney-client privilege. *In re Hodgson,* 492 F.2d 1175 (10th Cir. 1974); *In re Wasserman,* 198 F.Supp. 564 (D.D.C.1961). "Such matters are surely relevant, and—in the absence of allegations as to special circumstances—we see no reason why an attorney should be any less subject to questioning about fees received from a taxpayer than should any other person who has dealt with the taxpayer." *Colton v. United States,* 306 F.2d 633, 637–638 (2d Cir. 1962). "Like any other expenditure, attorney's fees are a legitimate subject of inquiry, unless other factors are present which make an answer to such an inquiry a disclosure of a fundamental communication in the relationship. The testimony here, however, elicited no more

---

3. Judge Constantino, in the Eastern District of New York case, also noted that the information sought might not be privileged because the attorney-client privilege did not apply where legal representation is sought in furtherance of continuing illegality even if the attorney is unaware of the situation. *In re Grand Jury Subpoenas Dated April 19, 1978,* 451 F.Supp. 969, 972 (E.D.N.Y.1978).

4. In this situation, the taxpayers were already known and being investigated by the Internal Revenue Service. In the taxpayer situation illustrated earlier, the taxpayer volunteered to pay additional tax before there was an investigation. Disclosure of the taxpayer's identity in the latter situation would likely lead to an investigation of that taxpayer by the Internal Revenue Service. See *Baird v. Koerner,* 279 F.2d 623, 633 (9th Cir. 1960).

than would have been elicited by introducing evidence that the defendant had bought a Rolls-Royce for cash (i. e., a substantial expenditure)." *United States v. Jeffers,* 532 F.2d 1101, 1115 (7th Cir. 1976), *rev'd in part on other grounds,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977).

Petitioner has not demonstrated that the payment of fees was a confidential communication; he has merely shown that it might be incriminating. But most information which is brought before a grand jury is potentially incriminating. The Court is not persuaded that the payment of fees in this case is anything more than a necessary incident to the attorney-client relationship nor that the payment constitutes a confidential communication in this case. In sum, the Court does not find that any special circumstances exist which bring this case within the exception or which would tip the scale against the public's need for the information and in favor of the attorney-client privilege.

In its memorandum, the government has also requested an order directing that the petitioner answer questions regarding the receipt and disposition of any moneys from his client. During oral argument, the Court understood petitioner to assert the attorney-client privilege only with respect to the fees received from his client. Accordingly, the Court does not address the issue of any moneys *other than* fees. Further, it appears that the government seeks to know the *disposition* of any moneys received by petitioner as *fees.* Although the government has stated that "[a]s to the disposition of these moneys the witness is not a subject of the grand jury's inquiry," it has also requested answers concerning the "receipt and disposition of moneys received from the client," which the Court construes to mean all moneys including fees. The Court deems it premature at this stage to deal with any questions involving the *disposition* of moneys received as fees.

In sum, the application to quash the subpoena is hereby denied and petitioner is directed to answer questions regarding attorney's fees which he received from Richard Roe, the client in question, in 1977 and 1978.

SO ORDERED.