## KITZ v. BUCKMASTER.

(Supreme Court, Appellate Division, Fourth Department. November 22, 1899.)

1. EVIDENCE—ATTORNEY AND CLIENT—CONFIDENTIAL COMMUNICATIONS.

Code Civ. Proc. § 835, declaring that an attorney shall not be allowed to disclose communications made by his client to him, or his advice given thereon, in the course of his professional employment, does not prevent an attorney testifying to conversations with, or advice given to, one not his client, and who did not consult him as such.

2. SAME—QUESTION FOR COURT.

Whether the relation of attorney and client existed between a lawyer and another, so as to render the former incompetent to testify to con-

versations between them, is for the court to decide, on conflicting evidence.

3. SAME—MOTION TO STRIKE—OBJECTION—WAIVER.
   Where, after an attorney had testified to communications with a party to the suit, it appeared that the relation of attorney and client existed, and no motion was then made to strike out such testimony, any objection thereto will be deemed waived.

Appeal from trial term, Onondaga county.

Action by Matilda Kitz against John D. Buckmaster. From a judgment for plaintiff, and from an order denying a new trial on the minutes, defendant appeals. Affirmed.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

D. R. Cobb, for appellant.

M. E. Driscoll, for respondent.

ADAMS, J. The plaintiff brings this action to recover damages for an assault and battery alleged to have been committed upon her by the defendant on the 2d day of October, 1897. The record before us discloses the usual conflict of evidence in cases of this character, much of which is entitled to little, if any, consideration, inasmuch as at least one of the principal witnesses on either side unhesitatingly announced her willingness to resort to falsehood whenever, in her judgment, circumstances seemed to render it desirable for her to do so; and the evidence, as a whole, justifies the inference that the rupture between the parties, whose relations up to the time it occurred had been quite intimate, was the natural product of the immoral atmosphere in which they, as well as some of their witnesses, were living. However, the jury, after hearing all the evidence, and weighing the same carefully, rendered a verdict favorable to the plaintiff; and that verdict, so far as this appeal is concerned, must be regarded as conclusive upon every controverted question of fact which the case presents.

It is insisted, however, that the judgment and order appealed from should be reversed by reason of error committed by the learned trial court in the admission of incompetent evidence, and our attention is directed to several exceptions which are said to present such error. We have given attention to these various exceptions, and find but one which requires serious consideration. Upon the trial Mr. Edward S. Jenney, a prominent and reputable lawyer residing in the city of Syracuse, was called as a witness for the plaintiff, and permitted, over the defendant's objection, to testify to a telephonic conversation which took place between him and the defendant on the day the alleged assault was committed, in the course of which the defendant made certain statements or admissions tending to corroborate to some extent, at least, the plaintiff's evidence, and which for that reason were necessarily prejudicial in her favor. The contention of the defendant is that any admissions or declarations made to this witness by him were privileged, and should not have been received as evidence against him; and the question now to be determined is, what force, if any, is there in this contention?

By section 835 of the Code of Civil Procedure it is provided that:

"An attorney or counselor at law shall not be allowed to disclose communications made by his client to him, or his advice given thereon, in the course of his professional employment."

It is thus made plain that, within the strict letter of this provision, before a communication made to a lawyer can be treated as confidential or privileged it must affirmatively appear that the contractual relation of attorney and client existed, and that the communication was made by the latter in the course of the professional employment of the former. Renihan v. Dennin, 103 N. Y. 573, 9 N. E. 320; Rosseau v. Bleau, 131 N. Y. 177, 30 N. E. 52. This statutory provision is founded upon obvious principles of public policy, and is designed to enable any and all persons who invoke the aid and advice of lawyers to present their cases freely and fully, and with the absolute assurance that the relation between them and their legal advisers shall be treated by the latter as strictly confidential, and that the relation thus established shall remain forever inviolable. The absolute necessity of such a rule as the one just stated is easily seen, for no lawyer can intelligently advise a client in a given case without knowing all the facts which in any manner pertain thereto, and it often happens that, in order to acquaint his adviser with such facts, the client is obliged to divulge secrets which he would not divulge were he not assured that his disclosures were made under a seal of privilege which could not be removed without his assent; and so important to the client have the courts regarded this rule that they have construed it liberally, and with regard to its spirit rather than its letter. Thus, it has been held that the principle of exclusion does not depend upon the fact that a fee was paid, or that a suit was either pending or within the contemplation of the parties. It is enough if the communication is made within the course of professional employment; that it relates to the subject-matter of such employment, and has been drawn out by reason of the relation existing between the parties. Bacon v. Frisbie, 80 N. Y. 394. But, adopting, for the purpose of this review, the most liberal construction which the statute will permit, we are unable to see that the communications made by the defendant to the witness Jenney should have been excluded. The defendant was not, and never had been, a client of Mr. Jenney. He did not retain him, and had, so far as appears, no idea of retaining him, to defend him in any prosecution, either civil or criminal, which might possibly result from his alleged assault. He did not even attempt to consult with him or seek his advice. On the contrary, it seems that Mr. Jenney was the legal adviser of the plaintiff, that he was summoned to her house after the fracas of October 2d, and that, when he learned what had taken place, he called the defendant up by telephone, and upbraided him for his conduct, whereupon the defendant attempted to exculpate himself, and in so doing made some statements which may be regarded as equivalent to admissions that he had committed an assault upon the plaintiff. It is true that Mr. Jenney advised the defendant to leave town for a day or two, in order to avoid arrest, but this advice was apparently tendered in a friendly, rather than a pro-

fessional, way; for it appears that Jenney knew the defendant, and had on one or two occasions acted as attorney for his mother-in-law, Mrs. Coan, who, it also appears, had employed the plaintiff as a female detective, to investigate some affair in which she was personally interested. The precise nature of the business which had been intrusted to the skillful management of the plaintiff was something which none of the parties appeared anxious to disclose; but, whatever it was, it had obviously been complicated by the occurrence at the plaintiff's house at the time the assault in question is alleged to have been committed, and it was doubtless by reason of this fact that Mr. Jenney, as counsel for the plaintiff, or Mrs. Coan, or both of them, took the defendant to task, and suggested a temporary sojourn in a neighboring town until the plaintiff could be placated. However this may be, it was for the court to determine, upon these as well as such other facts as appear in the case, whether the relation of attorney and client existed between Mr. Jenney and the defendant (Bacon v. Frisbie, supra); and we are inclined to think that the conclusion reached in that regard was correct. The mere fact that a witness happens to be a lawyer does not disqualify him from testifying to conversations had with or advice given to other parties; for such advice may be given in the interest of third parties, or because of a friendly interest in the person to whom it is given. In either case no confidential relation would have been created, and consequently the rule of privilege would have no application. Haulenbeek v. McGibbon, 60 Hun, 26, 14 N. Y. Supp. 393. We are not unmindful of the fact that the defendant testified that he believed Mr. Jenney was acting as his attorney, but this was not until after the distasteful evidence had been received. If this statement on the part of the defendant materially changed the situation, —and we do not think it did,—it became the duty of his counsel to ask that the evidence of Mr. Jenney be stricken out. This he omitted to do, and he must therefore be deemed to have waived the right to claim that this particular item of evidence strengthens his position. Inasmuch as, in our judgment, no error was committed in the reception of the evidence objected to, it follows that the judgment and order appealed from should be affirmed.

Judgment and order affirmed, with costs. All concur.