UNITED STATES of America and Richard R. Welcome, Special Agent of the Internal Revenue Service, Petitioners,

v.

SCHENECTADY SAVINGS BANK and Jill Natole, Administrative Assistant, Respondents,

Folger P. Gifford, Intervenor.

UNITED STATES of America and Richard R. Welcome, Special Agent of the Internal Revenue Service, Petitioners,

v.

FIRST NATIONAL BANK OF SCOTIA and Calvin Welch, Cashier, Respondents,

Folger P. Gifford, Intervenor.

UNITED STATES of America and Richard R. Welcome, Special Agent of the Internal Revenue Service, Petitioners,

v.

AINSWORTH, SULLIVAN, TRACY AND KNAUF, and Jeremiah F. Manning, Partner, Respondents,

Folger P. Gifford, Intervenor.

Misc. Nos. 466–468.

United States District Court, N. D. New York.

Oct. 28, 1981.

George H. Lowe, U. S. Atty., N.D.N.Y., Albany, N. Y., for petitioners.

Higgins, Roberts, Beyerl & Coan, P.C., Schenectady, N. Y., for respondent-Schenectady Savings Bank; Daniel R. Burns, Schenectady, N. Y., of counsel.

Ainsworth, Sullivan, Tracy & Knauf, Albany, N. Y., for respondents-Ainsworth, Sullivan, Tracy and Knauf and Jeremiah F. Manning, Partner; Thomas F. Tracy, Jeremiah F. Manning, Albany, of counsel.

Richard V. D'Alessandro, P.C., Albany, N. Y., for intervenor.

## MEMORANDUM–DECISION and ORDER

### JAMES T. FOLEY, District Judge.

The United States of America and Richard R. Welcome, Special Agent of the Internal Revenue Service (IRS) filed petitions in the above proceedings on June 1, 1981, for an order directing the respondents to show cause why they should not be compelled to obey IRS summonses served upon them. These proceedings were brought pursuant to Title 26 U.S.C. §§ 7402(b) and 7604(a), to enforce judicially the IRS summonses.

Petitioners are investigating the accuracy of the federal estate tax return of Katherine P. Gifford, who died on April 1, 1978.

In accordance with 26 U.S.C. § 7609(a)(1)(B), Folger P. Gifford, co-executor of the decedent's estate, was given notice of the summonses served upon the above respondents. And pursuant to his legal right under 26 U.S.C. § 7609(b)(2), Folger Gifford administratively stayed compliance. He was then granted leave to intervene in the proceedings pursuant to 26 U.S.C. § 7609(b)(1) without opposition from the petitioners.

The petitions to enforce the IRS summonses against the above named respondent-banks were granted by my memorandum-decision and order dated June 2, 1981. Intervenor Gifford and Respondent Manning filed papers in opposition to the enforcement of the summons directed at Attorney Jeremiah F. Manning and the law firm of Ainsworth, Sullivan, Tracy & Knauf. Attorney Manning and this law firm of which he is a partner assisted in the preparation of the decedent's federal estate tax return. The IRS summons directed Manning to give testimony regarding the tax liability or the collection of the tax liability of Katherine Gifford's estate. Additionally the summons sought production of the following:

1. All documents and records in your possession or control that were utilized in the preparation of the United States Estate Tax Return (Form 706) filed by the estate of KATHERINE P. GIFFORD, including, but not limited to:

   a. Schedules, summaries, listings, analyses and workpapers.

   b. Correspondence, notes and memoranda.

   c. Any and all other records, not herein specifically described, which were utilized in the preparation of the cited estate tax return.

2. Retained copy of United States Estate Tax Return Form 706, filed by the Estate of KATHERINE P. GIFFORD.

Intervenor Gifford and Respondent Manning claim that full compliance with this summons would violate the attorney-client privilege and Gifford's Fifth Amendment rights, and would make available to the IRS

the work product of Attorney Manning. However, during oral argument in chambers on petitioners' motion to enforce this summons, an agreement was reached by the attorneys for the parties for at least partial enforcement of and compliance with the summons. It was agreed that thereafter Attorney Manning would appear and testify before an officer of the IRS. During the testimony, he would assert the attorney-client and the Fifth Amendment privileges when appropriate in his judgment. Any documents that were sought by the summons would be produced unless Manning asserted either of these privileges or the work product doctrine to protect them. It was further agreed that after the above proceeding took place, this Court would then determine whether Attorney Manning properly invoked these legal protections for his testimony and documents sought by the IRS.

On June 17, 1981, Attorney Manning appeared and testified before Special Agent Anthony A. Cesare. He refused to answer approximately seventy-one questions posed to him in regard to the estate of Katherine P. Gifford. *See* Exhibit 1: Transcript of Investigation, held June 17, 1981. He also refused to produce many of the documents in his possession obtained in regard to the estate. These documents were delivered to the Court on July 21, 1981, by Attorney Manning for in camera inspection to determine whether they were protected from production pursuant to the summons in any way.

On September 11, 1981, a hearing was held by the Court to determine whether Attorney Manning properly asserted the attorney-client privilege, Fifth Amendment right against self-incrimination or the work product rule to support his refusal to answer certain of the questions or produce certain of the documents described in summons. Only Attorney Manning testified at this hearing. He tendered questions to himself and was questioned by United States Attorney Lowe for the petitioners, and Richard D'Alessandro, attorney for Intervenor Gifford. Part of the testimony of Attorney Manning in open court was heard

without the presence of the government attorney and IRS Agent. At the hearing, I directed Attorney Manning to answer some of the questions posed to him which he had claimed were protected. Three documents were produced by the respondent at this hearing for which Intervenor Gifford no longer claimed a privilege. A fourth document was also turned over at the hearing because it developed that a copy of it was already given to the IRS by Intervenor Gifford. Decision was reserved as to some areas of questions and as to the remaining documents. It is the purpose of this memorandum-decision to set forth the reasons why, in my judgment, there should be further enforcement of the summons involved. However, I do find that some documents and some questions are in fact privileged in some manner and to some extent and will not have to be produced or answered pursuant to the summons. For the reasons stated hereinafter, the summons against Attorney Manning will be enforced accordingly.

## DISCUSSION

### WORK PRODUCT RULE

█ It has recently been recognized that the work product doctrine is applicable in IRS summons enforcement proceedings. *Upjohn Co. v. United States*, 449 U.S. 383, 397, 101 S.Ct. 677, 686, 66 L.Ed.2d 584 (1981). *See Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). However, the doctrine applies only to those materials that are "prepared in anticipation of litigation or for trial." Fed.R.Civ.P. 26(b)(3). In the present circumstances, it no longer appears that the respondent and intervenor place reliance on this doctrine. At the September 11, 1981 hearing and in Intervenor Gifford's brief filed with the court there was no claim made that any papers sought to be discovered were collected or prepared in anticipation of litigation. Therefore, this doctrine is inapplicable in the present summons enforcement proceeding. *See Colton v. United States*, 306 F.2d 633, 640 (2d Cir. 1962), *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963). The

papers utilized by Attorney Manning were to aid in preparing the tax return, not primarily to help litigate over those returns. *See United States v. Davis,* 636 F.2d 1028, 1040 (5th Cir.), *cert. denied,* 50 U.S.L.W. 3248 (October 5, 1981).

## PRIVILEGE AGAINST SELF–INCRIMINATION

■ The respondent seeks to shield certain documents from production by invoking the protection of Intervenor Gifford's Fifth Amendment right against self-incrimination. It is well settled that the privilege against self-incrimination is a personal one, and it cannot be invoked by a third-party to protect someone else. *Couch v. United States,* 409 U.S. 322, 328, 93 S.Ct. 611, 616, 34 L.Ed.2d 548 (1973). Equally well settled is that "compelled production of documents from an attorney does not implicate whatever Fifth Amendment privilege the taxpayer might have enjoyed from being compelled to produce them himself." *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). However, the Supreme Court noted in *Fisher* that in some circumstances the privilege against self-incrimination could attach and protect documents which were originally in the hands of the taxpayer, but had since been transferred to the taxpayer's attorney. *Id.* at 405, 96 S.Ct. at 1578. A two-pronged inquiry was mandated by the *Fisher* case which was recently detailed by the Second Circuit in *In re Katz,* 623 F.2d 122 (2d Cir. 1980). Katz, an attorney, refused to testify or produce documents that had been subpoenaed by the grand jury on the grounds that the information requested was protected by the attorney-client privilege. The case was remanded to the district court to consider the inquiry in *Fisher.* This inquiry is:

(1) Would the documents in issue be privileged under the fifth amendment had they remained in the possession of [the client] and had the subpoena been directed to him?

(2) Are they protected by the attorney-client privilege while in the possession of [the attorney]?

*Id.* at 126.

■ In the present circumstances, the court must first determine whether Intervenor Gifford was ever in possession of any of the documents for which he could claim a Fifth Amendment privilege. Then it must be determined whether these documents, if any, would be privileged by the Fifth Amendment had he retained possession. If there are any documents that would have been protected if they had remained in Gifford's hands, it then has to be determined if they were transferred to Manning, the attorney, for the purpose of obtaining legal advice.

With the mandates of the *Fisher* case in mind, the documents summoned from Attorney Manning were viewed in camera. Very few of these documents were ever in the hands of Intervenor Gifford. Of these documents, only one of them would have been protected by the Fifth Amendment in the hands of Intervenor Gifford had he retained possession of it; therefore this single document meets the first prong of the *Fisher* test. This document is the handwritten copy of Form 706 prepared by Intervenor Gifford. Whether this document is protected from production while in the possession of Attorney Manning will be discussed hereinafter.

The remaining documents are not protected by Intervenor Gifford's Fifth Amendment rights, although some may be privileged by the attorney-client privilege standing alone. Basically, these remaining documents consist of correspondence between Attorney Manning and Intervenor Gifford; correspondence with another co-executor of the estate; third party letters; a retained copy of a portion of the Form 706 filed for the estate; and Attorney Manning's worksheets. The production of these documents by Attorney Manning would not violate Gifford's right against self-incrimination for Gifford presumably would not be compelled to do anything. *Fisher v. United States, supra,* 425 U.S. at 403, 96 S.Ct. at

1577; *In re Katz, supra; United States v. Beattie*, 522 F.2d 267 (2d Cir. 1975), *remanded*, 425 U.S. 967, 96 S.Ct. 2163, 48 L.Ed.2d 791 (1976), *modified*, 541 F.2d 329. *See United States v. Coratti*, 47 A.F.T.R. 892 (N.D.N.Y.1981), *appeal dismissed*, No. 81–6047 (2d Cir. May 26, 1981); *United States v. Sneeky Theef Records, Inc.*, Misc. 504 (N.D.N.Y. Sept. 3, 1981).

ATTORNEY–CLIENT PRIVILEGE

█ Intervenor Gifford and Attorney Manning assert in a broad manner that all of the questions unanswered and the documents withheld by Attorney Manning are privileged from production by the attorney-client privilege. At the outset, it must be noted that "the burden of establishing the existence of the attorney-client relationship and its applicability to the particular circumstances presented is upon the party claiming the privilege." *In re Katz, supra* at 125; *United States v. Demauro*, 581 F.2d 50, 55 (2d Cir. 1978); *United States v. Stern*, 511 F.2d 1364, 1367 (2d Cir.), *cert. denied*, 423 U.S. 829, 96 S.Ct. 47, 46 L.Ed.2d 46 (1975); *In re Horowitz*, 482 F.2d 72, 82 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973).

█ The attorney-client privilege as set forth by Wigmore is: (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such (3) the communications relating to that purpose (4) made in confidence (5) by the client (6) are at his insistence permanently protected (7) from disclosure by himself or the legal adviser (8) except the protection be waived. 8 Wigmore, *Evidence* § 2292 (McNaughton rev. 1961), at 554, cited with approval in *In re Horowitz, supra*, at 80 n. 7. It is clear that the worthy purpose of the privilege encourages clients to make full disclosures to their attorney. Since the privilege results in withholding relevant information from the factfinder, it is applied only where necessary to achieve its purpose. *In re Horowitz, supra* at 81–82. And it is to be confined to the narrowest possible limits consistent with its purpose. *In re Katz, supra*, at 125.

The Second Circuit has analyzed in depth the applicability of the attorney-client privilege in IRS summons enforcement proceedings in *Colton v. United States, supra*, 306 F.2d 633 (2d Cir.). Citing 8 Wigmore, *Evidence* § 2311 (McNaughton rev. 1961), the Second Circuit noted:

> Not all communications between an attorney and his client are privileged. Particularly in the case of an attorney preparing a tax return ... *a good deal of information transmitted to an attorney by a client is not intended to be confidential, but rather is given for transmittal by the attorney to others*—for example, for inclusion in the tax return. Such information is, of course, not privileged.

*Colton v. United States, supra*, at 638. (Emphasis added).

In *Colton*, attorneys were served with summonses to give testimony and produce retained copies of income tax returns, workpapers, correspondence, files, memoranda and other data relating to the preparation and filing of the tax returns of a client. The court noted that questions pertaining to the date and the general nature of the legal services performed by the attorney for the taxpayer should be answered as they do not call for any confidential communications. *Id.* at 636. Furthermore the court stated that copies of income tax returns would be unprivileged as not confidential because by definition they contained no information that was not intended to be given to the IRS. *Id.* at 640. Statements, correspondence, and documents received from third parties were not protected. The Second Circuit in *Colton* found that the only papers that are protected are those papers prepared by the client for the purpose of giving confidential communications to the attorney or prepared by the attorney to record confidential communications. *Id.* at 639. *See United States v. Cote*, 456 F.2d 142 (8th Cir. 1972); *United States v. Merrell*, 303 F.Supp. 490, 492–93 (N.D.N.Y.1969) (J. Port); *United States v. Threlkeld*, 241 F.Supp. 324 (D.C.Tenn.1965). Income and expense statements prepared by a client to be given to an attorney for inclusion in the tax returns were also held to be unprivi-

leged. *In re Shapiro,* 381 F.Supp. 21, 23 (N.D.Ill.1974); *United States v. Merrell, supra,* at 493. Additionally, the workpapers of an attorney in preparing the forms consist of information that was intended to be transcribed onto the tax returns, and were therefore unprivileged. *Id.*

■ In my judgment and from my review in camera, very few of the documents in the possession of Attorney Manning regarding the estate of Katherine P. Gifford are protected by the attorney-client privilege. The only documents that I find to be so privileged are those documents which were written by the intervenor herein, in which he related confidential communications to the attorney or documents written by the attorney to record the confidential communication of the client in connection with the giving of legal advice. *Colton v. United States, supra,* at 639. These privileged documents include: (1) Letter from Intervenor Gifford to Attorney Manning dated December 18, 1978 with attached schedule; (2) Three letters from Attorney Manning to Intervenor Gifford dated November 21, 1978, December 4, 1978, and December 20, 1978; (3) White worksheet of Attorney Manning's containing calculations and comments. These documents to my mind contain confidential communications that do not relate or convey information for the purpose of filing the estate tax return. They contain information and legal advice regarding other aspects of the estate not confined to the estate tax return preparation, such as for the purpose of planning and estate administration.

■ The other documents, in my judgment, are not privileged. For example, the pencil copy of Form 706 written by Intervenor Gifford which may have been privileged by the Fifth Amendment if possessed by him, is not privileged by the attorney-client privilege in the possession of Attorney Manning. Attorney Manning testified that Intervenor Gifford held all the assets of the estate and was to supply him with most of the asset information so that an estate tax return could be filed. Attorney Manning further testified that the information con-

tained on the penciled form was the same information as reported on the filed form. Therefore, it is obvious that the information contained on the penciled form was not intended to be confidential, but instead was intended to aid Manning in the filing of the estate tax return. The correspondence of Manning, Intervenor Gifford and other co-executors of the estate for the same purpose is not privileged. This correspondence basically contains questions and responses for the information needed to complete and file the decedent's estate tax return. Two letters from Merrill Lynch Pierce Fenner & Smith Inc. to Intervenor Gifford dated June 22, 1978 and October 30, 1978 are not privileged. These are third party letters containing necessary information needed to file the estate tax return. The yellow worksheet of Attorney Manning consists of information that was to be transcribed onto the tax return and is therefore, in accord with the previous reasoning, not protected. And clearly, the retained copy of a portion of Form 706 must be considered not within the attorney-client privilege.

In regard to the questions that Manning refused to answer on the ground of the attorney-client privilege, the attorneys for the parties agreed that there were basically two types of questions in issue: (1) those that relate to the identity of the client; that is, those that identify one of the co-executors as providing the information for the estate tax return; and (2) those that relate to the substance of the information given by a co-executor to Manning. After reviewing Exhibit 1, the entire transcript of the proceeding between Manning and Special Agent Cesare, it is my judgment that most, but not all of the questions can be answered by Attorney Manning without any violation of the attorney-client privilege.

■ As a general rule, a client's identity is not protected by the attorney-client privilege. In *Colton,* the Second Circuit followed the general rule, but noted that there may be exceptions to the rule when:

the identification of the client may amount to the prejudicial disclosure of a

confidential communication, as where the substance of a disclosure has already been revealed but not its source.

*Colton v. United States, supra,* at 637. In the *Matter of Grand Jury Subpoenas, Dated April 19, 1978,* 451 F.Supp. 969 (E.D.N.Y. 1978), attorneys in a grand jury proceeding claimed the attorney-client privilege to protect a client's identity. Relying on *Colton,* the court held that the attorneys' testimony about the identity of the client did not violate the attorney-client privilege. The fact that a particular known client has communicated with an attorney is not privileged under the general rule. *Matter of Walsh,* 623 F.2d 489 (7th Cir. 1980), *cert. denied, Walsh v. U. S.,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1981). More particularly, an attorney has been required to disclose that he received the books and records he used to secure information compiled on a tax return from a certain client and that the client gave instructions as to their use. *United States v. Schmidt,* 360 F.Supp. 339, 349 (M.D.Pa.1973). In *Schmidt,* the court held specifically that this information relates to peripheral matters which are not confidential within the meaning of the attorney-client privilege. *Id. See United States v. Strahl,* 590 F.2d 10 (1st Cir. 1978), *cert. denied,* 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979). *United States v. Threlkeld, supra.*

▌There are no exceptional circumstances present in this case that would protect the client's identity from disclosure. The identity of the persons who supplied the necessary information to Manning for the preparation and filing of the estate tax return is not privileged. It should also be noted that Attorney Manning has admitted that he has already disclosed that Intervenor Gifford provided him with much of the information needed. *See* Exhibit 1, p. 70 at ques. 338, 339; p. 71 at ques. 343; p. 72 at ques. 347; p. 75 at ques. 363; p. 77 at ques. 371; p. 80 at ques. 380–390; p. 82 at ques. 394–397; p. 83 at ques. 400–412; p. 89 at ques. 425–437; p. 93 at ques. 439.

▌The other questions, those that seek to disclose the substance of the communications between Manning and the co-executors of the estate, have to be considered individually to determine if the question calls for a privileged response. It is my judgment that some of the questions call for responses that would violate the attorney-client privilege. Certain responses would disclose the legal advice given to the co-executors regarding the administration of the estate and other confidential matters. This type of information was intended to be confidential. It is not the type of information that is normally passed on to third parties, including the IRS. The questions I find to be protected from answer by the attorney-client privilege are questions 108, 111, 119, 132, 208, 211, 307, 326, 368, 378, 379, 398, 399, 438, 440, 441, 458, 460, 464. It should be noted that many of the questions concerning the substance of communications between these parties which may have been privileged, were answered by Attorney Manning in some form before he asserted the privilege. The privilege is waived if it is not asserted.

## RELEVANCY

▌Intervenor Gifford and Attorney Manning claim that some of the testimony and documents sought are not relevant in this proceeding. The relevance and materiality of the information must be judged by the standard consistently relied upon in the Second Circuit. The standard is "whether the inspection sought 'might have thrown light upon' the correctness of the taxpayer's returns." *Foster v. United States,* 265 F.2d 183, 187 (2d Cir.), *cert. denied,* 360 U.S. 912, 79 S.Ct. 1297, 3 L.Ed.2d 1261 (1959). *Accord, United States v. Noall,* 587 F.2d 123, 125–126 (2d Cir. 1978), *cert. denied,* 441 U.S. 923, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979); *United States v. Davey,* 543 F.2d 996, 999 (2d Cir. 1976); *United States v. Harrington,* 388 F.2d 520, 523 (2d Cir. 1968). In my judgment, the questions asked of Manning at the interview with the IRS are relevant and should be answered if not otherwise privileged. However, one of the documents sought is clearly not relevant to the subject matter of this investigation and need not be

produced. This document is the interoffice memorandum of the law firm.

CONCLUSION

In summary, I find that with the exceptions previously discussed, a sufficient basis does not exist for the invocation of the attorney-client and Fifth Amendment privileges or the work product doctrine by Attorney Manning to protect certain of his testimony and documents sought by the summons. The petitioners are therefore entitled to further enforcement of the IRS summons to the extent outlined herein. The documents in question shall be retained by the Clerk in sealed condition until further order of the court. An order in accord with the rulings herein, if consented to, shall be submitted by the government, otherwise settled on three days' notice.

It is so Ordered.