Harold **DRIMMER** and Mount Hope
Mines, Inc., Plaintiffs,

v.

Donald K. **APPLETON** and Hope
Valley Realty and Construction
Corp., Defendants.

No. 83 Civ. 5237 (RWS).

United States District Court,
S.D. New York.

Jan. 15, 1986.

Eric D. Koster, P.C., White Plains, N.Y.,
for plaintiffs; Eric D. Koster, of counsel.

Norman I. Klein, Clifton, N.J., for defendants.

1. Originally this motion contained requests for
an order compelling defendant's counsel Norman I. Klein to appear for deposition and to
answer certain questions and an order extend-

OPINION

SWEET, District Judge.

Plaintiffs Harold L. Drimmer ("Drimmer") and Mount Hope Mines, Inc.
("MHM") bring this motion to compel defendant Donald L. Appleton ("Appleton")
to appear for deposition and to answer
certain questions pursuant to Rule 37 of
the Federal Rules of Civil Procedure.[1] Appleton opposes this application for an order
to compel him to answer these questions on
the ground that they impinge on the attorney-client privilege, as they involve his conversations with counsel regarding settlement negotiations in a related Nevada
State Court action. Because Appleton has
waived his right to invoke the attorney-client privilege with regard to these discussions, Drimmer's motion to compel is granted.

**Facts**

In May, 1979, Appleton instituted an action in the Seventh Judicial District Court
for the State of Nevada. In the trial of
that action, which commenced on October
25, 1982 and lasted for five days, Appleton
sought to enforce a purported oral contract
granting him an interest in MHM. On
October 30, 1982, during the jury deliberations, the parties entered into an oral
agreement settling all claims raised in the
Nevada action. The agreement was negotiated by Peter D. Laxalt ("Laxalt") and
Robert H. Perry ("Perry"), Appleton's attorneys, and by Drimmer and his attorneys
Roger W. Jeppson and William Peterson.
Appleton was not present, but had participated in earlier discussions with Drimmer
on the subject of a settlement agreement.

Later the same day, the jury returned a
verdict in Appleton's favor, granting him
16⅔% interest in the profits of MHM. According to Drimmer, Appleton then attempted to repudiate the settlement agree-

ing the completion date for discovery. These
matters were resolved at the motion hearing on
November 15, 1985.

ment, Laxalt removing his name from the original of the settlement agreement and refusing to give Drimmer's attorney a copy of the agreement. According to Appleton, the final settlement agreement did not comport with the tentative understanding which he had reached with Drimmer in prior discussions. Drimmer seeks to enforce this settlement agreement in the present action.

Judgment was entered in Nevada in Appleton's favor based on the jury verdict, and Drimmer brought a motion for, among other things, summary enforcement of the settlement agreement or in the alternative for a new trial. At the November 30, 1982 hearing on the motion, Drimmer called Perry, Appleton's attorney, to testify about the events surrounding the settlement agreement. The transcript of this hearing reveals that Perry testified about the following details of the settlement agreement negotiations:

(1) The circumstances surrounding the settlement meetings between opposing counsel.

(2) Perry's conclusions about the legal validity of the settlement agreement.

(3) Perry's discussions with Appleton about the provisions of the settlement.

(4) The circumstances of Laxalt's repudiation of the settlement agreement and the renegotiation attempts.

On May 23, 1983 Drimmer's motion for a new trial was granted.

Drimmer then instituted this New York proceeding on July 13, 1983. Appleton sought a stay of the New York proceeding, and on July 10, 1984, all proceedings were stayed until the resolution of the Nevada action or until June 30, 1985, whichever came earlier, except those relating to the first three causes of action which were not at issue in the Nevada action. Because of subsequent appeals to the Nevada Supreme Court and the disqualification of the original trial judge, the Nevada action is set for trial on March 10, 1986.

During his deposition in this action, Appleton invoked the attorney-client privilege, a privilege that was waived, according to Drimmer, by Perry and Laxalt's prior testimony detailing the Nevada discussions, and refused to answer any questions which pertained to his conversations with Laxalt and Perry.

**Discussion**

■ Rule 501 of the Federal Rules of Evidence provides that in civil actions in which state law supplies the rule of decision, the privilege of a witness should be determined in accordance with state law. As this claim was removed from the state to federal court on diversity grounds, the state law of privilege applies. *See Dixon v. 80 Pine Street Corp.*, 516 F.2d 1278, 1280 (2d Cir.1975). New York conflict rules thus determine which body of privilege law is to be applied to this action. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (In diversity cases the substantive law of the state applies, including the state conflict of laws principles). In the case at hand, New York privilege rules govern this question of attorney-client privilege, as generally the New York courts apply the law of the place where the evidence in question will be introduced at trial, or the location of the discovery proceeding itself. *Cepeda v. Cohane*, 233 F.Supp. 465, 470 (S.D.N.Y.1964), 5 Weinstein, Korn & Miller, New York Civil Practice ¶ 4503.03 (1978). *See also Resorts International, Inc. v. Straight Arrow Publishers, Inc.*, No. M8-85 (July 28, 1980 S.D.N.Y.) and cases cited therein. The presence of both of these factors in the case at bar makes it appropriate to determine the validity of this asserted privilege under New York law. This is the apparent conclusion of the parties, as they have briefed primarily New York State law of privilege.

The transcript of Perry's testimony of the Nevada proceeding reveals that much of his in court discussion about the settlement agreement concerned matters within the scope of the attorney-client privilege. Judge Wyzanski's classic statement of the

scope of the privilege, a codification universally adopted by the courts of this Circuit, provides:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of commiting a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358 (D.Mass.1950). According to Appleton, Perry's testimony in Nevada concerned only the non-confidential underlying facts of the settlement agreement negotiations and not the communication between client and attorney which is covered by the privilege. However, the transcript of Perry's testimony demonstrates that Perry discussed his and Laxalt's conversations with Appleton about the course of the negotiations and the substance of the settlement agreement:

> PETERSON: Did you discuss the terms of the agreement with Mr. Appleton, or was that Mr. Laxalt?
>
> PERRY: I discussed them once. It is my understanding that Mr. Laxalt discussed them himself once. But I wasn't present at the second discussion.
>
> PETERSON: Did you communicate the essential terms of the Agreement to Mr. Appleton as I have described them?
>
> PERRY: I did.

> PETERSON: During that conversation, Mr. Appleton never indicated to you that he had entered into any other agreements, did he?
>
> PERRY: No.

■ The question, therefore, is whether Appleton's presence in open court during Perry's testimony and failure to object to that testimony operates as a waiver of the attorney-client privilege.[2] Appleton does not dispute the fact that an attorney has an implied authority to waive the privilege on behalf of his client, *United States v. Aronoff*, 466 F.Supp. 855, 862 n. 7 (S.D.N.Y. 1979), but claims that Drimmer has not shown that Appleton had knowledge or understanding of the privilege or knowledge that Perry's testimony would be a waiver of that privilege.

New York courts have held consistently that the burden of establishing the existence of the privilege is upon the party claiming the privilege. *In Re Horowitz*, 482 F.2d 72 (2d Cir.1973); *United States v. Schenectady Savings Bank*, 525 F.Supp. 647 (N.D.N.Y.1981) and that waiver of the privilege may be actual or implied. *United States ex rel Edney v. Smith*, 425 F.Supp. 1038 (E.D.N.Y.1976), *aff'd*, 556 F.2d 556 (2d Cir.1977). The rule applicable to implied waiver of the privilege is that "unless there are some circumstances which show that the client was surprised or misled, it seems the usual rule that the client's failure to claim the privilege would apply here, and that decisions treating such testimony on cross-examination as being involuntary and not constituting a waiver are hardly supportable." C. McCormick, Evidence § 97 p. 195 (1972), *see also In Re Penn Central Commercial Paper Litigation*, 61 F.R.D. 453, 463–464 (S.D.N.Y.1973) (Voluntary disclosure or the consent to the disclosure of a communication otherwise subject to a claim of privilege effectively waives the privilege and the person opposing the waiver must demonstrate that the waiver was not volun-

---

**2.** While Drimmer asserts that Laxalt also waived the privilege by quoting verbatim from his conversations with Appleton when he argued the Nevada appeal before the Nevada Su-

preme Court, Drimmer has failed to provide evidence or transcripts of this alleged second waiver.

tary or that it was made without opportunity to claim the privilege).

Appleton has offered no evidence to demonstrate that he did not impliedly consent to Perry's public statement on the nature of the settlement agreement. He admits that he was present in the courtroom during the exhaustive direct examination of Perry and never objected to his attorney's discussion of conversations between himself and both Laxalt and Perry concerning their legal opinion on the fairness and terms of the settlement agreement. Neither Perry, as lawyer and witness for Appleton, nor his co-counsel Laxalt, nor Appleton himself objected to the nature of the questions being asked, although repeatedly at points during the hearing the right and possibility of objection was raised:

> PETERSON: During that meeting, were you in attendance during the meeting when Mr. Laxalt indicated that he wanted to renegotiate and set the case on the basis different from that set forth in the Memorandum of Understanding?
>
> PERRY: Yes.
>
> PETERSON: Did you agree with that?
>
> PERRY: Well, I didn't say anything one way or another. Are you asking me if I personally agreed with it?
>
> PETERSON: Yes
>
> PERRY: Well, I don't know. There is nobody here to object to questions. I don't know whether my personal opinion—
>
> THE COURT: You have no counsel to represent you in these proceedings. You are competent enough to decide whether you want to answer.
>
> THE WITNESS: Well, I think the way to say it is I wasn't really excited by that approach.
>
> PETERSON: Let me ask you straight out, Mr. Perry—you can object if you want to—you acknowlege yourself, as an attorney and member of the State Bar and as Mr. Appleton's client (sic), that you entered into a good faith agreement with us on Saturday in Mr. Bud Lloyd's office when we settled the case and shook hands?
>
> PERRY: That is my personal opinion. My professional opinion is different.

(Appendix D, Transcript pp. 19–20).

Both opposing counsel and the court noted that the questions asked might raise the attorney-client privilege, particularly in light of the fact that Perry was called to the stand by opposing counsel and not by his own client to serve as both attorney and witness. As the court observed, nobody was present to represent Perry, but he and Laxalt were there to represent Appleton and to raise appropriate objections.

Under these circumstances, Appleton voluntarily permitted his attorney to testify regarding the matter to which he now asserts a privilege, and must be deemed to have waived the privilege by implied consent. *Jakobleff v. Cerrato, Sweeney & Cohn,* 97 A.D.2d 895, 468 N.Y.S.2d 895 (N.Y.Dept.1983); *Trans World Airlines, Inc. v. Hughes,* 332 F.2d 602, 615 (2d Cir. 1964); *Kew Gardens Sanitarium, Inc. v. Trussell,* 45 Misc.2d 104, 255 N.Y.S.2d 742, 744 (N.Y.Sup.Ct.1965); 5 Weinstein, Korn & Miller, New York Civil Practice, ¶ 4503.-20 (1978) (the client may waive his privilege by allowing his attorney to testify without objection), *citing Kitz v. Buckmaster,* 45 A.D. 283, 61 N.Y.S. 64 (4th Dept.1899). Disclosure of a significant part of these confidential communications has waived the privilege as to the entire matter, *United States v. Aronoff, supra,* 466 F.Supp. at 862; *Teachers Insurance v. Shamrock Broadcasting Co., Inc.,* 521 F.Supp. 638, 641 (S.D.N.Y.1981), and it also cannot be reasserted in a subsequent judicial proceeding involving the same information. *Id.* at 646.

Drimmer's Rule 37 motion to compel Appleton to answer questions concerning the settlement agreement negotiations is granted.

IT IS SO ORDERED.