[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO COMPEL
In this case an attorney who previously represented the plaintiff company was deposed by the attorney for the defendant law firm. During the course of the deposition he was asked two questions which, at the instruction of the attorney for the plaintiff, he refused to answer claiming the privilege. Counsel for the defendants has now filed a motion to compel seeking a ruling by the court that there is no privilege that applies here and even if there was, it has been waived.
The matter before the court is a malpractice action in which the plaintiff, BHC, claims that the defendant law firm failed to advise the company and its officers to register as an offeror of CT Page 14328 business opportunities under the Connecticut Business Opportunity Investment Act. This allegedly caused their business to collapse. After the company was represented by the defendant they retained Attorneys Clayman and Avery-Wetstone. These attorneys advised the company concerning the appropriateness of registration under the Act. This advice and the circumstances under which it was given has been the subject of testimony on several occasions. Mr. Remington, the president of BHC, testified before the Banking Commission and in depositions in this case. Attorney Clayman was deposed and Attorney Avery-Wetstone who represented the company along with Clayman testified before the judge who heard an earlier motion to compel filed in this case.
To determine whether the decision and orders of the judge who heard the first motion to compel should dictate the result here, I have not only read the transcript excerpts submitted to me but the full transcripts of that hearing. The most important parts of the transcripts on this issue appear to be the observations of the court and counsel on pages 27 through 36 of the April 15, 1994 transcript and pages 26 through 33 of the January 31, 1994 transcript. In the April 15th transcript the court was made aware of the testimony of the company president before the Banking Commission which the defendants rely on here in part to show waiver. Remington in effect relied on the advice of counsel before the Commission. It doesn't appear that Mr. Remington's deposition testimony was gone into in detail and Mr. Clayman's deposition testimony occurred after the hearing held on the first motion to compel so that was not before the court.
Frankly I find it difficult to ascertain whether the judge who heard this matter explicitly decided the attorney-client privilege in the context of how it is presented for the purposes of this motion. That hearing involved deciding whether certain documents should be turned over to the defendant so a large part of the argument turned on the work product rule. Clayman's deposition testimony was not before the court and at the bottom of page 28 of the January 31, 1994 transcript, when it looked like privilege matter was about to be inquired into, an objection was made not on the basis of the privilege, but on the basis of that being something that would involve cross-examination at a trial or deposition. I don't know what effect that might have had on the posture the court took. What probably should have been done here is that a motion for articulation should have been filed before the first judge if he couldn't otherwise hear this motion so that a second judge hearing the present motion could CT Page 14329 evaluate the law of the case argument.
In any event, I'm not bound by the first judge's decision and I'm reluctant to hold that what are basically evidentiary rulings, even though they enforce a privilege, are never to be disturbed by judges hearing aspects of a case at a later point. There is no detrimental reliance and evidentiary rulings peculiarly depend on the context in which they are presented and those contexts change during the course of litigation.
For the purposes of the hearing on this motion to compel, the defendants have brought the following to the court's attention: Both Attorney Clayman at deposition and Attorney Avery Wetstone at a hearing explicitly revealed what advice they gave the company. Mr. Remington also testified as to what advice he thought he received regarding the company's duty to register under the Act.
Also, the defendants have presented portions of the deposition testimony of Mr. Clayman and Remington which indicate what information was communicated by Mr. Remington and other company officials to Attorney Clayman as a basis for the advice he gave.
First as to Mr. Remington's deposition testimony:
 Q. Didn't they say to you after having looked at all the material and taking into account what you folks told them you were doing. Isn't it true that they said to you, "It was very gray as to whether we were in violation or not?"
A. Yes.
. . . . . . . . . . .
 Q. So did you continue to sell license and distributorships at that time?
A. Yes we did.
. . . . . . . . . . .
 Q. Did you want to know what the consequences would be to the company if you kept selling and it was later determined that you should have registered? Did you want to know that. CT Page 14330
A. I never thought of that.
. . . . . . . . . . .
 Q. Did Mr. Clayman explain to you in July when he got back to you the first time and said he couldn't tell whether you were in violation or not, what the consequences were of selling if it were later to be determined that you were in violation?
 A. He told us that if we were in violation, that it was a serious matter, and if we wanted to franchise our concept, we would have to disclose the violations, if we truly were violating any statutes.
. . . . . . . . . . .
 Q. And did Mr. Clayman tell you in July of 88 what risks you were running if you continued to do business as you had been doing before and if it was later determined that you had been in violation?
A. He didn't get into specific risks, no.
Portions of Attorney Clayman's deposition testimony were presented also. Mr. Clayman was asked if the company, when it came to him for representation, was selling "licenses". He said the company called them that — he said: "Business opportunities is what they were selling." Then the following occurred:
 Q. Was it your view in late May of 1988, early June of 1988, when they came to you and you learned what they were doing, that their selling of business opportunities without having registered as a business opportunity under the Connecticut law, was illegal?
A. Was it my view, yes.
Q. Okay did you tell them that.
A. Somewhere along the line we told them they could not do that.
The deposition then continued and the motion to compel arises out of the fact that Attorney Clayman was directed not to respond to two questions during his deposition by the attorney for the CT Page 14331 defendant company. The questions as to which the privilege was asserted were:
 (1) What was the explanation the client (BHC) gave you as to why they didn't stop selling?
 (2) Did you experience any trouble and difficulty getting information and documents from the BHC people?
The defendants first assert as to question (1) that any explanation given Clayman was not a communication made for the purpose of seeking legal advice. As to question (2) the defendants claim it does not seek the disclosure of a communication of any kind in which legal advice was sought. The question asks "for Mr. Clayman's experience in working with his clients."
The defendants go on to argue that even if the questions are viewed as seeking the disclosure of communications in which legal advice is sought the plaintiff has waived the privilege.
(1)
The general principles as to the attorney-client privilege are set out in State v. Hayes, 150 Conn. 457, 466 (1967); Reinzov. Santangelo, 160 Conn. 391, 395 (1971); also see Colten v.United States, 306 F.2d 633 (ed. 2, 1962).
As to question (1) it is difficult to understand how any explanation given under the circumstances in which it was asked for could not be covered by the privilege. A contrary position envisages a snapshot view of lawyer-client relationships. Here a client, BHC, went to lawyers seeking advice. One of the areas about which the client sought advice was their obligation to register under a state act. The lawyers gave their advice. The lawyers at that point had an ongoing legal relationship with the client both before and after the particular advice was given and a continuing duty to advise the client and protect the client's interest on the matters for which the client originally came to them. As part of that duty a lawyer would have to ask the client if his or her advice was in fact followed. That question would necessarily elicit an explanation from the client which the lawyer would have to examine and weigh in deciding whether to reiterate the advice previously given, change the presentation of the advice or even modify the advice first given. CT Page 14332
To hold the privilege doesn't protect an explanation by the client to the lawyer as to why certain advice wasn't followed would have a chilling effect on the client's communications with the lawyer subsequent to the advice and while the lawyer still has an obligation to represent the client and the client is still relying on the fulfillment of that obligation.
As to question (2) — did you have any trouble and difficulty getting information and documents from your client — the defendants claim this does not seek the disclosure of a communication in which legal advice was sought. We just want Attorney Clayman's experience in working with his clients, it is argued. The plaintiff is willing to have the question answered yes or no. It is difficult to determine at this time whether any inquiry beyond this would invoke the privilege. What if the answer is yes? Would the defendants then argue that ascertaining the dates when the difficulty in securing information or documents occurred would be an appropriate line of inquiry? Would they have a right to inquire as to what documents or information the difficulty was experienced? The latter question would go into areas covered by the privilege. The question as to dates would allow client communications to be circumstantially reconstructed depending on the nature of the discrete documents or information inquired into and the sequential relationship of the information and documents to each other and to other documents and information in the case. I can't determine this because I don't have access to all the documentary materials or information previously disclosed. Because of this I will also try to resolve the issue of whether a response to question (2) is required in terms of assuming on the basis of what I know that a privilege exists and then deciding whether the privilege has been waived.
(2)
Has there been a waiver? A waiver in this case revolves around an interpretation of two waiver theories. If a party raises "the advice of counsel" as an essential element of a claim or a defense, then it has been held that the party waives the privilege as to all advice concerning the same subject matter.Hunt v. Blackburn, 128 U.S. 464, 470 (1888); U.S. v. Aronoff,466 F. Sup. 855, 862 (SD NY, 1984); Skelton v. Spencer, 565 P.2d 1374,1377 (Id. 1977).
Also it has been held there is a waiver "from conduct such as CT Page 14333 partial disclosure which would make it unfair for the client to invoke the privilege thereafter." McCormick On Evidence, § 93, page 341 (Vol. I); also see 8 Wigmore Evidence § 2317 pp. 634-638 (1961 rev.).
(a.)
The "advice of counsel" waiver rule is based on a sense of fairness. As McCormick says there can't be any doubt about the desirability of a rule which prevents a party from relying on the advice of counsel as an essential element of a claim or defense while at the same time the party frustrates a "full explorationof the character of that advice." Id. § 93, p. 343.
The language in one federal case goes farther when it says this type of waiver is not limited to disclosure of the character of the advice given. The court in Panter v. Marshall Field Co.,80 FRD 718, 721 (1978) said:
 "Where as here a party assets as an essential element of his [sic] defense reliance upon the advice of counsel, we believe the party waives the attorney-client privilege with respect to all communication, whether written or oral, to or from counsel concerning the transactions for which counsel's advice was sought." (emphasis added)
 Sherman v. Neurological Surgeons, P.C., 2 CSCR 468 (1987), quotes this broad language with approval but its actual holding was that by relying on the advice of counsel the defendants had waived the privilege and their former attorney could be deposed as to estate planning advice. Also, in Lee National Corp. v.Deramus, 313 F. Sup. 224, the court used "advice of counsel" reasoning to find what it called a "limited waiver". The court went on to say that once the company involved in the case
 ". . .disclosed that it had some confidential conversations with counsel relating to the bylaw and charter amendments it could not refuse to identify, on the ground of privilege, other occasions when this particular subject matter was discussed with counsel. Fairness demands that all occasions when this subject was discussed with counsel be revealed." Id., p. 227.
In other words it is not necessarily true that merely because the advice of counsel waiver theory applies all communications between client and counsel must be disclosed in addition to the CT Page 14334 full contents of any and all advice given. One would be hard put to argue the client in relying on advice of counsel intentionally meant to waive the privilege as to such communications merely because the advice was disclosed. Notions of "fairness" don't require any such result either. In fact, if the reasoning behind this particular type of waiver is examined how can it be said to apply under the circumstances of this case? The "advise of counsel" testimony by Mr. Remington before the Banking Commission was proffered by him, I would imagine, to secure some type of lenient treatment from the Commission in light of his company's failure to register under the Act. How does the fact that Remington relied on the advice of counsel for that reason have anything to do with advancing BHC's malpractice claim here or rebutting a defense raised to that claim by the defendants. Or to put it another way, the defendants don't seem to be able to claim here that failure to find a waiver is in effect allowing the plaintiff to advance a claim or pursue a defense in this suit based on the advice of counsel and which by not allowing the waiver they can't fairly rebut. Thus, in this case, Mr. Remington's reliance on the "advice of counsel" before the Banking Commission is not a relevant matter. Panter v. MarshallField Co., supra at p. 721; Garfinkle v. Arcata National Corp.,64 FRD 688 (1974).
Although the factual setting is somewhat different, the general language in United States v. Aronoff, 466 F. Sup. 855,862 (SD NY, 1979) is constructive:
 "Most of the cases that have found implied waivers involved assertions by a client that made his confidential communications a material issue in a judicial proceeding, circumstances in which it would be patently unfair to uphold a claim of privilege. Where a privilege-holder has made assertions about privileged communications, but has attempted to bar other evidence of those communications, there is a serious danger that his assertions are false or misleading. Thus, where his assertions have been offered on a material issue in a judicial proceeding, his privilege should be revoked at least with respect to any communications whose disclosure might affect the factfinder's judgment as to that issue. But where, as here, the privilege-holder has made assertions about privileged communications not to a factfinder at trial, but to his adversary, before trial, and has not, by any affirmative act, placed these communications in issue, it is harder to justify revoking his privilege as to matters not disclosed. The CT Page 14335 principle of waiver by implication as a qualification on the attorney/client privilege `should not be applied without reference both to the objectives of the privilege and the qualification.'"
I do not find that there has been a waiver here as to these questions on the advice of counsel theory.
(b.)
The other argument advanced to establish waiver of the attorney/client privilege is based on the claim of partial disclosure.
Wigmore says in Volume 8 at § 2328, page 638:
 "The client's offer of his [sic] own or the attorney's testimony as to a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter."
At § 93, pp. 341-342, McCormick points out that waiver can be found:
 ". . .not merely from words or conduct expressing an intention to relinquish a known right, but also from conduct such as partial disclosure which would make it unfair for the client to invoke the privilege thereafter. Finding waiver in situations in which the forfeiture of the privilege was not subjectively intended by the holder is consistent with the view, expressed by some cases and authorities, that the essential function of the privilege is to protect a confidence which, once revealed by any means, leaves the privilege with no legitimate function to perform."
Two preliminary matters should be noted regarding the scope of the privilege before the partial disclosure waiver theory is discussed. Ordinarily questions which would require a client to disclose the subject matter discussed confidentially with an attorney are barred by the privilege. Lee National Corp. v.Deramus, 313 F. Sup. 224, 226 (D. Del. 1970); Chivac v. Reinicker,24 U.S. 278, 294-295 (1826).
Also, as McCormick notes at § 89, page 326, the generally accepted view is that communications and thus advice by the lawyer to the client are protected by the privilege. CT Page 14336
 ". . .the privilege will protect at least those attorney to client communications which would have a tendency to reveal the confidences of the client. In fact, only rarely will the attorney's words be relevant for any purpose other than to show the client's communications circumstantially or to establish an admission by the client by his failure to object."
Mr. Remington testified before the Banking Commission about the subject matter of the discussions he had with his attorney and engaged in some discussion about the general advice that was given to his company. Attorney Clayman testified at his deposition, without objection, as to what his advice had been. Attorney Avery Wetstone also without objection touched on these subjects during the hearings on the first motion to compel.
There is a waiver here, the real question is its scope. It seems to me that the plaintiff could not argue the privilege against questions directed at Clayman concerning the advice he gave. Defense counsel can now pursue this in some detail and in effect circumstantially construct what in fact BHC and its officers told Clayman or Avery Wetstone. If the subject matter of the attorney/client communication is revealed voluntarily and without objection and the advice actually given is described, it is difficult to understand why the communications that led to the advice are not subject to inquiry despite a claim of the privilege. A partial disclosure can be constructed already by the very information at hand and once this has occurred, apart from considerations of "fairness" to opposing counsel, how can a court rationally develop and administer a test that would set forth guidelines as to how much partial disclosure is actually necessary before full disclosure is triggered. If ever there was an area where bright line tests are needed this is it. It is up to the client to protect the privilege. Once the subject matter of the attorney contact is revealed and the advice given regarding that subject matter is disclosed by the client or by an attorney without objection by the client or his or her current attorney, then there should be a waiver.
The plaintiffs try to avoid this result by making the following observation in their May 7, 1993 brief: "Although the plaintiffs acknowledge that there has been prior testimony generally relating to the information BHC provided Clayman at the initial meeting the substance of the communication was not revealed and therefore the privilege has not been waived." (P. CT Page 14337 6). This misses the point insofar as it avoids the possible waiver consequences of Remington and Clayman talking about the advice given BHC, however it is worthwhile to examine this position on its own terms.[1]
The case of SCM Corp. v. Zerox Corp., 70 FRD 508 (D. Conn. 1976), is instructive on this question, especially at pages 519-520. There the court refused to find waiver as to the substance of legal conversations where a company witness merely testified the company had retained counsel and endeavored to follow counsel's advice. The court also refused to find waiver where Xerox executive made statements that were "general, vague and conclusory."
What concerns me here is the fact that Mr. Remington at several instances discussed the subject matter and reasons why he had conversations and sought the advice of Attorney Clayman. He then gave the Banking Commission his version of the advice that Clayman gave him about the obligation to register. At the deposition Attorney Clayman gave a very different version as to what his advice to the company was. The advice Attorney Clayman gave or did not give may have nothing to do with establishing the standard of care for the actions of the defendant attorneys being sued who represented BHC prior to Attorney Clayman. But BHC officers' state of mind receptively to and willingness to follow any advice given certainly might be of some relevance. States of mind are continuing. Given the fact that Remington voluntarily testified before the Banking Commission and Mr. Clayman was allowed to testify at a deposition about the advice he actually gave the issue of the advice actually given would appear to be relevant. That being so, how can it be said that the explanation Clayman remembers BHC officers gave him for not following the advice he claims to have given, not be relevant to establish what that advice actually was. There has already been a waiver as to the fact of advice having been given and what it was.
I believe the privilege has been waived in this matter and Attorney Clayman should have to answer question (1). As to question (2), it is so broadly phrased I can imagine some circumstances or lines of inquiry that would be opened where the privilege might be claimed. Insofar as possible at any future deposition counsel should attempt to comply with this decision on the scope of any questioning that might occur after a simple yes or no answer to question (2). If a dispute arises the privilege can be again claimed and the matter will have to be decided. CT Page 14338
Corradino, J.